## Case No. 2,980.

### In re COLEMAN.

[15 Blatchf. 406.][1]

Circuit Court, S. D. New York. Jan. 2, 1879.

VIOLATION OF ELECTION LAWS — NATURALIZATION — COURT RECORDS — DOCKET ENTRIES.

1. An affidavit for a complaint of a violation of section 5426 of the Revised Statutes of the United States alleged that C. did, for the purpose of registering himself as a voter, unlawfully use a certain certificate of citizenship, knowing that such certificate had been unlawfully issued or made, without stating how such use was unlawful, or how the certificate had been unlawfully issued or made. *Held*, that the affidavit did not show probable cause for the issuing a warrant, within the fourth amendment to the constitution of the United States.

[Cited in Re Davenport, 48 Fed. 531.]

2. The question as to what constitutes a record of naturalization, considered.

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

3. Under the act of April 14, 1802 (2 Stat. 153), and the act of May 26, 1824 (4 Stat. 69), it is not one of the "conditions" of admission to citizenship, that the applicant shall see to it that the proceedings are recorded.

4. Where docket entries stand in the place of any other record, and are regarded by the court which makes them as the record, they receive from other courts the same consideration, as a record, which is accorded to them by the court which permits them to stand in the place of any other record, provided there is no express provision of law prescribing any other record.

[Explained in Charles Green's Son v. Salas, 31 Fed. 110.]

5. Where an applicant for citizenship complies fully with all the conditions imposed on him, as prerequisites to his admission, and the unlawfulness, if any, is in the want of form in the record of the court, and he receives at the time, from the court, a certificate stating that all the statutory requisites have been complied with, and that he is admitted to be a citizen, he cannot, if he afterwards uses such certificate, be convicted, under said section 5426, of using such certificate, knowing that it was unlawfully issued.

[Cited in Charles Green's Son v. Salas, 31 Fed. 107.]

On habeas corpus.

Stewart L. Woodford, Dist. Atty., and Samuel B. Clarke, Asst. Dist. Atty., for the United States.

E. Ellery Anderson and George W. Wingate, for Coleman.

BLATCHFORD, Circuit Judge. On the 3d of November, 1878, Stephen Mosher made oath before John I. Davenport, a United States commissioner, to an affidavit "that there is to be an election held in the city of New York, on the 5th day of November, 1878, at which representatives in congress are to be chosen; that there has, in accordance with the laws of the state of New York, been a registration of voters for said election; that such registration was held on the eighth, sixteenth, twenty-fifth and twenty-sixth days of October, 1878; that, as deponent is informed and believes, one Peter Coleman did, on one of the said days of registration, for the purpose of registering himself as a voter, or otherwise, unlawfully use a certain certificate of citizenship of the superior court in the city of New York, showing him to be admitted to be a citizen, knowing that such certificate had been unlawfully issued or made; this, in the eleventh election district of the second assembly district of the said city, and in violation of the laws of the United States; and deponent further says, that a portion of his information is derived from, and one of the grounds of his belief is founded upon, the statements of said Peter Coleman, made to the board of inspectors of election in said election district, at the time he so used said certificate, as the same are set forth and contained in the copy of the registry of said district, made and kept by one of the supervisors of election of the United States at said time and place, and the report made thereof by said supervisor, which state-ment, records and report deponent believes to be true." This affidavit was made for the purpose of obtaining a warrant of arrest against Coleman, for having committed an offence against section 5426 of the Revised Statutes of the United States, which provides, that "every person who in any manner uses for the purpose of registering as a voter, or as evidence of a right to vote, or otherwise, unlawfully, any order, certificate of citizenship, or certificate, judgment, or exemplification, showing any person to be admitted to be a citizen, whether heretofore or hereafter issued or made, knowing that such order or certificate, judgment, or exemplification has been unlawfully issued or made; and every person who unlawfully uses, or attempts to use, any such order or certificate, issued to or in the name of any other person, or in a fictitious name, or the name of a deceased person, shall be punished by imprisonment at hard labor not less than one year nor more than five years, or by a fine not less than three hundred nor more than one thousand dollars, or by both such fine and imprisonment." On this affidavit, the commissioner, on the 4th of November, 1878, issued a warrant under his hand and seal, to the marshal, as follows: "Whereas, complaint on oath has been made to me, charging that Peter Coleman did, in the 11th election district of the second assembly district of the city of New York, on or about the 16th day of October, in the year one thousand eight hundred and seventy-eight, unlawfully use a certain certificate of citizenship, purporting to be issued or granted by the superior court in the city of New York, showing him to be admitted to be a citizen, then and there knowing that such certificate had been unlawfully issued or made—this in violation of the laws of the United States—now, therefore, you are hereby commanded, in the name of the president of the United States of America, to apprehend the said Peter Coleman, and bring his body forthwith before me, or some judge or justice of the United States, wherever he may be found, that he may then and there be dealt with according to law, for the said offence." Coleman was arrested and brought before said commissioner on said warrant, and, the charge set forth in said warrant being explained to him, and an examination respecting the same being had, the commissioner, on the 5th of November, 1878, committed him to the custody of the marshal, to await the action of the grand jury in the premises, in default of $2,000 bail. The commitment was endorsed on the warrant.

Coleman was brought before this court, on a writ of habeas corpus, and the proceedings before the commissioner were brought before it by a writ of certiorari. Formal returns were made to both writs. The relator put in one traverse to both returns, and the commissioner put in a reply to such traverse. Thereupon, proofs were taken on the issues

of fact raised by said papers. The principles on which this court acts in issuing and adjudicating on writs of habeas corpus and certiorari, in cases like the present, are those laid down in Re Martin [Case No. 9,151]. The rulings established by this court in Re Stupp [Id. 13,563], apply solely to extradition cases.

The proofs taken herein were taken before a referee, and have not been submitted to the court, but the respective parties have stipulated in writing that the facts involved in these proceedings, are as follows: Peter Coleman was born in Prussia. He is now 34 years of age, having been born in 1844. From 1856 to 1860, he sailed to and from Liverpool in English bottoms. He arrived in this country in 1860, in the capacity of an ordinary seaman. From 1860 to 1863, he sailed to and from New York in American bottoms, living in the city of New York when in port. In February, 1863, he gave up going to sea, and has since resided continuously in said city. The certificate of which the following is a copy was given to Coleman, October 15th, 1868: "United States of America. State of New York. City and County of New York, ss: Be it remembered, that on the 15th day of October, in the year of our Lord one thousand eight hundred and sixty-eight, Peter Coleman appeared in the superior court of the city of New York, (the said court being a court of record, having common law jurisdiction and a clerk and seal,) and applied to the said court to be admitted to become a citizen of the United States of America, pursuant to the provisions of the several acts of the congress of the United States of America, for that purpose made and provided; and the said applicant having thereupon produced to the court such evidence, made such declaration and renunciation, and taken such oaths, as are by the said acts required, thereupon, it was ordered by the said court, that the said applicant be admitted, and he was accordingly admitted, by the said court, to be a citizen of the United States. In testimony whereof, the seal of the said court is hereunto affixed, this fifteenth day of October, one thousand eight hundred and sixty-eight, and in the ninety-third year of our independence. (L. S.) By the Court. James M. Sweeney, Clerk." Coleman testifies that his witness "was a man named Sandy Holland, who went by the nickname of Swain." Coleman offered himself for registry at the place of registry in the eleventh election district of the second assembly district of the city of New York, on the 25th of October, 1878. At that time he produced, for the purpose of enabling him to be so registered, what purported to be a certificate of naturalization issued by the superior court of the city of New York, on the 15th of October, 1868, of which a copy is above set forth. Thereupon, his right to register was challenged, on the ground that he had never been legally naturalized. At the time of being so challenged, he was also presented with, as the supervisor of election in the said district swears, a printed notice, of which the following is a copy, but Coleman denies the receipt of such notice: "United States Court House, Room 1, Fourth Floor. New York, October 15, 1878. Sir: As complaint has been filed with me charging you with being possessed of a false, fraudulent, and void certificate of naturalization, issued in 1868, your attention is called to the following notice from the U. S. district attorney. Respectfully yours, John I. Davenport. 'Office of the United States Attorney for the Southern District of New York. New York, October 12, 1878. To holders of certificates of naturalization purporting to have been issued from the supreme and superior courts in the city of New York in 1868: On August 24th and September 21st, ultimo, I gave notice that complaints had been lodged with John I. Davenport, Esq., United States commissioner, charging many persons residing in this district with being fraudulently possessed of fraudulent certificates of citizenship, (commonly known as naturalization papers;) that these certificates purported to have been issued by the supreme and superior courts in the city of New York, in the year 1868; and that such complaints further charged the holders of such certificates with having fraudulently registered thereon at the last congressional election in 1876. I gave further notice that these are offences against the laws of the United States. As some of the persons holding such certificates may be lawfully entitled to be naturalized, as many of them were possibly ignorant and misled, and in order that no injustice might be done to any person now willing to obey the law, I gave further notice, that each person against whom such complaint had been made could avoid arrest and prosecution by appearing before Commissioner Davenport, at his office in the United States court building, room 1, fourth floor, on or before the 12th day of October, 1878, and surrendering such certificate, if, upon examination, it should prove to be fraudulent. Commissioner Davenport has this day officially informed me that more than two thousand persons holding such certificates have presented themselves to him, since my said notice was given, and have voluntarily surrendered such certificates. At his request, and in order that full opportunity may be given to those who may still be disposed to obey the law, I hereby extend the time within which persons against whom such complaints have been made, may appear before Commissioner Davenport, at his said office, and surrender such certificates, if, upon examination, they shall prove to be fraudulent, until Friday, the first day of November, 1878. For the convenience of such of the accused as are laboring men, the U. S. commissioner's office will be kept open for the transaction of this

business until half-past eight o'clock in the evening. Stewart L. Woodford, U. S. Attorney.'" Coleman, upon being so challenged, was examined under oath respecting his claim to naturalization, and his right to said certificate, and took the statutory oaths for a challenged person, whereupon, such oaths being taken, said Coleman was, in compliance with the laws of the state of New York, duly registered by the inspectors of election. The only book in the office of the clerk of said superior court containing any entry in regard to the alleged naturalization of Coleman, is a book having pasted on its back labels of leather and paper, with the following words printed or inscribed upon them: "Naturalization Index, October 12, 1868, to October 16, 1868, Superior Court." The entry in said book relating to the case of Coleman, was as follows:

| 1868. Superior Court. 1868. 1868. Superior Court. 1868. | | | | |
|---|---|---|---|---|
| Date. | Name. | Nation. | Witness. | Remarks. |
| Oct. 15. | Coleman (min.) Peter. | Queen of England. | Dwain. Edward. | 339 Water, N Y. |

There is, in said book, no other entry relating to the case of Coleman, and no other matter except similar entries relating to other persons. Said book contains about 350 pages, and purports to cover four days, from October 12th, 1868, to October 16th, 1868, there being 35 names on a page, and 5,672 names in the book. With reference to the 15th of October, 1868, said book contains entries relative to 951 other persons besides Coleman. In the month of October, 1868, and prior thereto, there were, and, since that date, have been, several record books belonging to said superior court, entitled "Special Term and General Term Minutes," which were minutes kept in the manner that court minutes are usually kept, and there is no reference to Coleman therein, nor any mention of any matters relative to the naturalization of any alien, except as hereinafter mentioned, that is, before 1859 and since 1873. Among the papers on file in the office of the clerk of said superior court, is an original paper of which the following is a copy: "Superior Court of the City of New York. In the Matter of Peter Coleman, on his Application to become a Citizen of the United States. Minor. State of New York, City and County of New York, ss.: Edward Swain, of 339 Water St., being duly sworn, doth depose and say, that he is well acquainted with the above-named applicant; that the said applicant has resided in the United States for three years next preceding his arrival at the age of twenty-one years; that he has continued to reside therein to the present time; that he has resided five years within the United States, including three years of his minority, and that he has resided in the state of New York one year, at least, immediately preceding this application; and that during that time he has behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; and deponent verily believes, that for three years next preceding this application, it has been the real and honest intention of the said applicant to become a citizen of the United States. Edward (his X mark) Swain. Sworn in open court, this 15th day of October, 1868. James M. Sweeney, Clerk. State of New York, City and County of New York, ss.: Peter Coleman, of No. 330 Water St., New York, the above-named applicant, being duly sworn, says, that he has arrived at the age of twenty-one years; that he has resided in the United States three years next preceding his arrival at that age, and has continued to reside therein to the present time; that he has resided five years within the United States, including the three years of his minority, and that he has resided one year, at least, immediately preceding this application, within the state of New York, and that, for three years next preceding this application, it has been his real and honest intention to become a citizen of the United States. Peter (his X mark) Coleman. Sworn in open court, this 15th day of October, 1868. James M. Sweeney, Clerk. I do declare on oath, that it is my bona fide intention, and has been, for the three years next preceding this application, to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state or sovereignty whatever, and particularly to the queen of Great Britain and Ireland, of whom I was before a subject. Peter (his X mark) Coleman. Sworn in open court, this 15th day of October, 1868. James M. Sweeney, Clerk. I, ——, do solemnly swear, that I will support the constitution of the United States, and that I do absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state or sovereignty whatever, and particularly to the queen of Great Britain and Ireland, of whom I was before a subject. Peter (his X mark) Coleman. Sworn in open court, this 15th day of October, 1868. James M. Sweeney, Clerk." The four several documents composing said paper are all on one page of a half sheet of paper, and are printed blanks filled in. In writing, across the face of said paper, and partly on the margin and partly on the affidavit of Swain, on said paper, are the initials "J. H. McC.," in the handwriting of the Honorable John H. McCunn, who was a judge of the said superior court, in October, 1868, and is now dead. On the back of said half sheet of paper are the following words: "New York Superior Court. In the Matter of Peter Coleman, on his Naturalization—Minor. Affidavits, &c. Filed, Oct. 15, 1868." These words are a printed blank, filled in. The only books now in the office of the clerk of

said superior court, which purport to relate to the naturalization of any person, at any time between January 1st, 1859, and January 1st, 1874, are books which resemble in all respects that in which the said entry in regard to Coleman appears, except that the label on each of the books which cover the years preceding 1868, is "Naturalizations," and the label on each of the books which cover the years succeeding 1868, is "Naturalization Record." The only papers on file in said clerk's office, purporting to relate to the naturalization of any persons, between January 1st, 1859, and January 1st, 1874, are papers which resemble those in the case of Coleman, in all respects, one of which is filed in the case of each person whose name is entered in said books. Said books, labelled "Naturalizations," "Naturalization Index," and "Naturalization Record," covering the time between 1858 and 1874, contain entries relative to between 50,000 and 60,000 persons, of which more than 1,000 are as to females, and 20,000 are as to persons who, it is claimed, were naturalized in the year 1868, 18,432 of whom were in the month of October alone. The establishment and keeping of the volumes in use between 1858 and 1874, which contain such entries as appear in relation to Coleman in the said book labelled "Naturalization Index," was not in pursuance of any order of any term, general, special or circuit, of the said superior court, so far as appears by any record in said court. Prior to January 1st, 1859, when an alien was naturalized in said superior court, an entry was made in the court minutes book, in the following form: "Thursday, October 7th, 1858. Daniel McCarthy and Francis Popper personally appeared in open court this day and made application to be admitted as citizens of the United States, and, producing the evidence as required by law, and upon reading and filing such evidence, it is ordered that they severally be admitted as citizens of the United States of America." Since January 1st, 1874, whenever an alien has been naturalized by said superior court, an entry has been made in the court minutes book in the following form: "Monday, March 2d, 1874. The following named persons personally appeared in court, produced the evidence required by the several acts of congress, and, having made the declarations and renunciations as by said acts required, it is ordered, that said applicants be admitted to be citizens of the United States of America: Michael Brasby—Patrick Hunt. Thomas Boese, Clerk." When Coleman was brought before the commissioner, he demanded an examination, which was granted. Upon such examination, the commissioner had before him all the facts above stated, and the said notice, of which a copy is above set forth, alleged to have been given to Coleman when his right to register was challenged, together with the opinion of Judge Freedman, hereinafter referred to,

and proof that both had been previously published in most, if not all, the newspapers of said city, both German and English. Coleman was then committed by the commissioner, as having, for the purpose of registering himself as a voter, unlawfully used a certificate of naturalization, of which a copy is above set forth, knowing the same to have been unlawfully issued or made. All the issues arising on the pleadings and testimony in this case, except such as arise on the foregoing facts so stipulated in writing, and on the sufficiency of the original complaint, were waived by the counsel for the respective parties, by a stipulation in writing.

The sixth amendment to the constitution of the United States provides, that, in all criminal prosecutions, the accused shall enjoy the right "to be informed of the nature and cause of the accusation." This provision applies as well to the preliminary proceedings for arrest, before indictment, as to the indictment itself. The fourth amendment provides, that the right of the people to be secure in their persons against unreasonable seizures shall not be violated, and that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the person to be seized. Assuming that the words "or otherwise," in the affidavit of Mosher, may be regarded as surplusage, and that such affidavit, taking all its language together, sufficiently alleges that Coleman used the certificate of citizenship for the purpose of registering himself as a voter, in the election district named, and on one of the four days named, yet it does not state how such use was unlawful, or how the certificate had been unlawfully issued or made. There is no statement as to wherein the illegality of the use, or as to wherein the illegality of the issuing or making, of the certificate consisted. The use by a person, for the purpose of registering himself as a voter, of a "certificate of citizenship of the superior court in the city of New York, showing him to be admitted to be a citizen," is not a forbidden act or an offence. The only specification of an offence in the affidavit, is that Coleman "unlawfully" used for such purpose such certificate, knowing that such certificate had been "unlawfully" issued or made. Characterizing the use as unlawful does not give any information as to the nature of the offence. Whether the use was unlawful or not is itself a conclusion of law, and to allege that the use was unlawful is not to allege a fact. So, also, to allege that Coleman knew that the certificate had been unlawfully issued or made, is not to give any information as to what fact or facts he knew. The allegation that Coleman knew that the certificate had been unlawfully issued or made, is, in substance, an allegation of two things: First, that the certificate had been unlawfully issued or made; and, second, that Coleman knew that, when he so used it. The allegation that the certificate was unlawfully

issued or made, gives no information as to any fact, or as to the nature of any guilty knowledge by Coleman; and, to say that Coleman knew that the certificate was unlawfully issued, gives no information, unless it is set forth wherein the unlawfulness of the issuing consisted, and that Coleman knew the facts so alleged to constitute such unlawfulness. No "probable cause" was set forth in the affidavit.

The warrant is open to the same objections as the affidavit, in the use of the same words, "unlawfully use," and "unlawfully issued or made;" and to the further objection, that it does not set forth that the certificate was used for the purpose of registering as a voter, or for what purpose, but simply that it was unlawfully used by Coleman, in the election district named, on or about the day named, he knowing that it had been unlawfully issued or made.

In U. S. v. Henry [Case No. 15,350], I held, that, in an indictment under a statute which made it an offence to execute a fraudulent bond by which the payment of any internal revenue tax shall be evaded, it was sufficient to aver, in the indictment, that the defendant executed a specified bond, and that it was fraudulent, and that, by means of it, the payment of a specified internal revenue tax was evaded, and that the defendant knew the bond to be fraudulent; and that it was not necessary to set forth in what particulars the bond was fraudulent. This decision was made in view of the rulings in U. S. v. Gooding, 12 Wheat. [25 U. S.] 460, 474, U. S. v. Mills, 7 Pet. [32 U. S.] 138, 142, U. S. v. Staats, 8 How. [49 U S.] 40, 44, and U. S. v. Pond [Case No. 16,067], establishing the principle, that, "in an indictment for an offence created by statute, it is sufficient to describe the offence in the words of the statute, and that, if the defendant insists upon a greater particularity, it is for him to show, that, from the obvious intention of the legislature, or the known principles of law, the case falls within some exception to the general rule." The allegation that a bond was fraudulent, is an allegation of a fact, even though it is not stated wherein it was fraudulent, and even though to so state would be to state a further fact. But, the allegation that a certificate was unlawfully used or unlawfully issued, is not an allegation of a fact, but is the allegation of a conclusion of law. In this connection, the case of U. S. v. Hirschfield [Id. 15,372], in this court, before Judge Benedict, may be referred to. There, an indictment, under section 5512 of the Revised Statutes, which makes it an offence to fraudulently register, not having a lawful right so to do, alleged that the defendant fraudulently registered, having no lawful right to register. It was objected that the indictment was insufficient, because it simply averred that the accused fraudulently registered, without stating any facts to show that a fraud was com-

mitted, or to enable the accused to know what he was charged with having done. The indictment was held insufficient, on the ground that it did not point out the fraud which it was supposed the accused had committed, so that he could know what it was that he was called on to explain. The subject has recently been considered by the supreme court, in U. S. v. Cruikshank, 92 U. S. 542, 557, and, within the principles there laid down, it must be held that the affidavit of Mosher failed to disclose "probable cause" for the issuing of the warrant. It is not intended to be held, that, if the evidence before the commissioner, on the examination, showed the defendant to have been guilty of an offence against section 5426, or, if the evidence taken in the proceedings on this habeas corpus showed such guilt, it would necessarily follow that the defendant must be now discharged, because of the insufficiency of the original affidavit and warrant.

The main question discussed, on the hearing on the writ, was, whether the certificate of citizenship which Coleman used was unlawfully issued. It was contended, by the attorney for the United States, that the certificate was unlawfully issued, because there was no matter of record in the superior court on which to found it; and that, what has been found in, and produced from, the books and files of that court, does not constitute a record of the naturalization of Coleman. The proceedings in the superior court, in the case of Coleman, took place under the act of April 14, 1802 (2 Stat. 153), and the act of May 26, 1824 (4 Stat. 69). The first section of the act of 1802 contained the following provisions: "Any alien, being a free white person, may be admitted to become a citizen of the United States, or any of them, on the following conditions, and not otherwise: First. That he shall have declared, on oath or affirmation, before the supreme, superior, district or circuit court of some one of the states, or of the territorial districts of the United States, or a circuit or district court of the United States, three years at least before his admission, that it was, bona fide, his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state or sovereignty whatever, and particularly, by name, the prince, potentate, state or sovereignty whereof such alien may at the time be a citizen or subject. Secondly. That he shall, at the time of his application to be admitted, declare, on oath and affirmation, before some one of the courts aforesaid, that he will support the constitution of the United States, and that he doth absolutely and entirely renounce and abjure all allegiance and fidelity to every foreign prince, potentate, state or sovereignty whatever, and particularly, by name, the prince, potentate, state or sovereignty whereof he was before a citizen or subject; which proceedings shall be recorded by the clerk of the court. Thirdly. That the

court admitting such a lien shall be satisfied that he has resided within the United States five years at least, and within the state or territory where such court is at the time held, one year at least; and it shall further appear to their satisfaction, that, during that time, he has behaved as a man of a good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; provided, that the oath of the applicant shall in no case be allowed to prove his residence. Fourthly. That, in case the alien applying to be admitted to citizenship shall have borne any hereditary title, or been of any of the orders of nobility, in the kingdom or state from which he came, he shall, in addition to the above requisites, make an express renunciation of his title, or order of nobility, in the court to which his application shall be made, which renunciation shall be recorded in the said court." Section 3 of the act of 1802 provides, that "every court of record in any individual state, having common law jurisdiction, and a seal and clerk or prothonotary, shall be considered as a district court, within the meaning of this act." The first section of the act of 1824 provides as follows: "Any alien, being a free white person and a minor, under the age of twenty-one years, who shall have resided in the United States three years next preceding his arriving at the age of twenty-one years, and who shall have continued to reside therein to the time he may make application to be admitted a citizen thereof, may, after he arrives at the age of twenty-one years, and after he shall have resided five years within the United States, including the three years of his minority, be admitted a citizen of the United States, without having made the declaration required in the first condition of the first section of the act to which this is an addition, three years previous to his admission; provided such alien shall make the declaration required therein at the time of his or her admission; and shall further declare, on oath, and prove to the satisfaction of the court, that, for three years next preceding, it has been the bona fide intention of such alien to become a citizen of the United States; and shall, in all other respects, comply with the laws in regard to naturalization." Propositions are announced in this case, by the attorney for the United States, the accuracy of which cannot be questioned—such as, that the admission of an alien to citizenship is a judicial act; that it is essential that a court should act; and that the evidence submitted to the court for the purpose of admission to citizenship must be legal evidence.

It is further contended, by the attorney for the United States, that the proceedings and judgment of admission must be recorded. The act of 1802 provides, that the alien may be admitted to become a citizen "on the following conditions, and not otherwise:" (1) He must have declared his intention. (2) He must take an oath to support the constitution, and renouncing his former allegiance. The statute then says: "Which proceedings shall be recorded by the clerk of the court." Then follow the third and fourth conditions: (3) The court must be satisfied, by proof, as to the prescribed residence and character of the applicant, some other oath than his own being required to prove his residence. (4) The applicant must expressly renounce all titles and orders of nobility, "which renunciation shall be recorded in the said court." It is hardly to be supposed that congress intended to make the applicant for citizenship responsible for a noncompliance with any other conditions than such as he had the power to comply with. The applicant can declare his intention, and can take the prescribed oath and make the renunciation. But he cannot see to it that the proceedings and renunciation are recorded. He can produce a witness as to his residence and character, and can appear in person in the proper court, and be sworn there in open court, with his witness, as to the matters prescribed in the statute. When this is done, he can do nothing more except to receive such a certificate from the court as that which Coleman received from the court—a certificate which sets forth that it is given "by the court" under its seal; that Coleman appeared in the court on a day named, and applied to it to become a citizen, and produced to it such evidence, and made such declaration and renunciation, and took such oaths, as are required by the acts of congress on the subject; and that, thereupon, the court ordered that he be admitted, and he was accordingly admitted, by the court, to be a citizen of the United States. When he has done what the certificate says he has done, and when he leaves with the clerk of the court such papers as he has signed, and when the court tells him, as it does by the certificate, that, he having done all that, the court had thereupon ordered that he be admitted to be a citizen, and had admitted him to be a citizen, and when the court gives the certificate into his keeping, he has done all he can to comply with the statute. It cannot be held that the word "conditions" applies to anything further. There must, undoubtedly, be an act of admission, but what shall be the evidence, directed by the court, of such act of admission, is another question. The provision for recording "proceedings," at the close of the second condition, and the provision for recording the renunciation mentioned in the fourth condition, are introduced in such form that they may very well be regarded as merely directory, and as no part of the "conditions." The conditions are well satisfied by limiting them to what the applicant is required to do, in the first, second and fourth paragraphs, and to what the court is required to do, in the third paragraph. The admission to citizenship is to follow the observance of those conditions.

The recording is to follow the admission and not precede it. The admission separates the conditions from the recording. The court admitting to citizenship must have evidence of the prior declaration of intention, or, in the case provided for by the first section of the act of 1824, evidence of what is required by that section, and satisfactory evidence as to residence and character, and the applicant must take the prescribed oaths and make the prescribed renunciations, and then the court is authorized to admit him to become a citizen. Even if the evidence as to residence and character is required to be recorded, yet it, and all evidence as to a prior declaration of intention, and the oaths and renunciations of the applicant, and the evidence as to residence and character, may very well be recorded by placing the written papers on the files of the court, in the shape in which the court receives them as complete. Such papers, when filed, are just as much recorded, and just as much records of the court, as if they were bound in book form, and the book were filed, or as if they were copied at length in a book, and the book were filed.

As said before, there must be an act of admission by the court. But the court has a right to say what it will regard as its act of admission, and it has a right to say what it will regard as its order that the applicant be admitted, and what it will regard as his admission. Whatever the court says is its act of admission, and whatever the court says is its order of admission, is such act and such order, whenever the question is brought up in a collateral proceeding, such as is the present proceeding, provided there is sufficient to reasonably amount to such act and such order. Here, the superior court has said to Coleman, by the certificate, that he has complied with all the requirements of the statute, and that it has made an order thereupon that he be admitted to be a citizen, and that it has admitted him to be a citizen. The evidence produced on the subject, from the files and records of that court, shows, that the certificate stated the truth, in stating that Coleman appeared in the court and applied to it to become a citizen, and produced to it such evidence, and made such declaration and renunciation, and took such oaths, as the statute required. The three oaths of Coleman, embracing also the necessary declaration and renunciation by him, and the oath of the witness as to his residence and character, are all sworn to in open court, and are on one and the same page of paper, at the head of which is a title, showing that all the proceedings are in the matter of the application of Coleman to the superior court to become a citizen of the United States. The original page of paper is on file in that court, and bears the mark of having been filed on the same day on which the certificate was issued. This filing was a recording, within the meaning of the statute.

It is contended, by the attorney for the United States, that it has been shown that there was no matter of record in the superior court on which to found the certificate that was given to Coleman; that what was put on record was not an act of admission or an order of admission; that there should have been a record of a judgment of the court, in the same form as the ordinary record of a judgment between parties; that there is nothing in this case that can be regarded as such record, even including what is found in the "Naturalization Index" and the affidavits, and what is in them and on them; and that, therefore, the certificate was unlawfully issued. The evidence in this case shows very clearly that the superior court regarded what is found in the "Naturalization Index," in regard to Coleman, in connection with the paper of oaths, &c., and the initials of the judge on such paper, as amounting to an order for the admission of Coleman to be a citizen. The evidence shows that there was no other record or entry of any order for the admission of Coleman; but, it equally shows, not only that the court understood that there was an order for his admission, but, also, what it was that was understood by the court to be an order for his admission. The certificate given by the court under its seal states that there was an order made by the court for his admission. It follows, that what is now found is what the court referred to as the order. It is not claimed, that, between the end of 1858 and the beginning of 1874, any other form of order admitting to citizenship was made by the superior court in any case, different from what now appears to have been made in the case of Coleman, while it does appear, that, during all the time from 1858 to 1874, the form of the order of admission was the same as in the case of Coleman, (except that nothing appears as to any initials of a judge,) and that such form covers the cases of between 50,000 and 60,000 persons, who appear by the books of that court, before mentioned, to have been admitted by that court, during that period, to be citizens, if Coleman was so admitted. It may be that some, and, perhaps, many of the entries in such books may have been intended as statements that persons were naturalized who were not in fact naturalized, who never appeared in the court, and who never took any oaths, and on whose cases the court never acted, or acted only to reject them, and it may be that certificates were issued like that issued to Coleman, not only in cases thus fraudulently entered in such books, but in cases where no entry appears in such books. But no such case is now presented to this court. It is to be presumed, that, if it shall be judicially shown to the superior court that any entries of naturalization in its books are fraudulent, or that any fraudulent certificates have been issued under its seal, it will annul such entries and certificates. But the only question in this court, on this branch of the case, is, whether what is found in the

records of the superior court amounts to an order for the admission of Coleman to be a citizen. That court, for a period of fifteen years, observed the same forms of procedure, and kept the same records, and made the same orders of admission, in all cases of naturalization, as in the case of Coleman, and none others. During that period, nineteen judges occupied seats on the bench of that court. They were: Joseph S. Bosworth, Murray Hoffman, John Slosson, Lewis B. Woodruff, Edwards Pierrepont, James Moncrief, Anthony L. Robertson, James W. White, John M. Barbour, Claudius L. Monell, Samuel B. Garvin, John H. McCunn, Samuel Jones, Freeman J. Fithian, John J. Freedman, James C. Spencer, William E. Curtis, John Sedgwick and Hooper C. Van Vorst. It is to be presumed, that, in each case of naturalization, during that time, a certificate was given, like in form to that received by Coleman, and averring that the court had ordered the admission of the party. That series of judges must have regarded what was found on the files, or in the records or books of the court, in each case, as an order of admission, or as a record showing that such an order had been made by the court. The stipulation of facts states, that, in the case of each person whose name is entered in the book as naturalized, there are on file papers resembling in all respects those in the case of Coleman. There is, therefore, no entry in the book, of a naturalization for which there are no proper oaths, declarations and renunciations. If any certificates were ever put into the hands of any person, not based on any actual proceeding in the court, they were certificates as to which both the entry in the book and the filed oaths, &c., were wholly wanting. The fact that there is no record in the court of any order directing the establishment and keeping of the volumes containing entries of naturalizations between 1858 and 1874, is of no consequence. The very keeping of them, for so long a period, is equivalent to an order that they be kept; and the absence of any order or practice, during that period, as to any other form of order of admission or record of admission, shows that what was kept and done is to be regarded as a record and as the record. The form of record in use before 1859, and that in use since 1873, cannot, in this collateral proceeding, be regarded as any better or more satisfactory form of record or order than that used during the period between 1858 and 1874.

No case is cited, where what is found of record and on file in the case of Coleman has been held to be not a sufficient record or order of admission. In Spratt v. Spratt, 4 Pet. [29 U. S.] 393, the naturalization was held to be good. This was the case, also, in Stark v. Chesapeake Ins. Co., 7 Cranch [11 U. S.] 420, and in The Acorn [Case No. 29], and in Ritchie v. Putnam, 13 Wend. 524, and in McCarthy v. Marsh, 5 N. Y. 263.

There are decisions that the docket entries of a court are not admissible without laying a foundation therefor by showing why a copy of the record is not produced. Such was the case in Ferguson v. Harwood, 7 Cranch [11 U. S.] 408, and in Leveringe v. Dayton [Case No. 8,288]. But, where docket entries stand in the place of any other record, and are regarded by the court which makes them, as the record, they receive from other courts the same consideration, as a record, which is accorded to them by the court which permits them to stand in the place of any other record, provided there is no express provision of law prescribing any other record.

In Philadelphia, etc., R. Co. v. Howard, 13 How. [54 U. S.] 307, a copy of the docket entries of a court in a suit were produced, to prove the pendency of the suit. It was objected, that a formal record ought to have been shown. It appeared that the docket entries and files of the court stood in place of the record. The supreme court says: "When a formal record is not required by law, those entries which are permitted to stand in place of it are admissible in evidence." It then cites with approval the case of Reg. v. Yeoveley, 8 Adol. & E. 806, where it was held, that the minute book of the sessions was admissible to prove the fact that an order of removal had been made, it appearing that it was not the practice to make up any other record of such an order; and it also cites with approval the kindred cases of Arundell v. White, 14 East, 216; Jones v. Randall, Cowp. 17; and Com. v. Bolkom, 3 Pick. 281.

In Washington, etc., Steam Packet Co. v. Sickles, 24 How. [65 U. S.] 333, the plaintiffs, contending that a prior verdict and judgment in their favor against the defendants, estopped the defendants as to material questions in the cause, offered, as evidence of such verdict and judgment, docket entries thereof in a court of the District of Columbia. The defendants objected that the docket entries were simply memoranda or minutes from which a record of a verdict and judgment were to be made. The supreme court says: "It appears, that, in this district, as in Maryland, the docket stands in the place of, or, perhaps, is, the record, and receives here all the consideration that is yielded to the record in other states. These memorials of their proceedings must be intelligible to the court that preserves them, as their only evidence, and we cannot, therefore, refuse to them faith and credit. Boteler v. State, 8 Gill & J. 381; Ruggles v. Alexander, 2 Rawle, 232."

These decisions are conclusive of the present question. The statute, in requiring the proceedings to which it refers to be "recorded by the clerk of the court," required no other record, in respect to Coleman, than that which was made, either as respects the order of admission or any of the oaths or affidavits. In Re Christern [43 N. Y. Super. Ct. Rep. 523], before Judge Freedman, of the supreme

court of the city of New York, October 15th, 1876, persons in the exact position of Coleman applied to that court to have the record of the proceedings in that court, admitting them to citizenship, perfected by an entry nunc pro tunc of the fact of such admission in the minute book of that court. The sole ground of such application was, that the validity of the admission of the party to citizenship was disputed, on the allegation that there was no legal record of the judgment admitting him to citizenship, for the reason, that the clerk of the court did not write out an entry in the minute book of the court, reciting the proceedings and showing the adjudication made. This is the same point now urged here. Judge Freedman, in his decision in that case, details the practice of the supreme court from the close of 1858 to the close of 1873, in naturalization proceedings, and shows it to have been the same, in all cases, as in the case of Coleman. He held, that what was so done constituted a sufficient record, and that the want of any further or different record, and the absence of an entry in the general minute book of the court, did not render the admission to citizenship invalid. He, therefore, denied the application, on the ground that no necessity existed for granting it, because there was no defect in the record, which required perfection by amendment.

It is urged, by the attorney for the United States, that there is nothing to show that the book labelled on the back "Naturalization Index," and found in the office of the clerk of the superior court, was ever regarded by that court as a record, or that that court even knew of its existence; that it is as much a private, unofficial book as the note paper in the clerk's desk is private, unofficial paper; that there is nothing to show when the entries in it were made, nor by whom they were made; that, for all that appears to the contrary, they were made up from the affidavits alone, some time after the time when the affidavits purport to have been made; that it does not appear that the book was kept even by the authority or direction of the clerk of the court; and that it may have been made up by, and have been the property of, some deputy who used it as an aid in making searches. There is no evidence tending to show that what is thus conjectured has any foundation in fact. It was open to the United States to show, that the "Naturalization Index" was not regarded by the superior court as a record, or that its existence was unknown to that court, or that it was a private, unofficial book, or that the book was not kept by the authority or direction of the clerk of the court, or that it was the property of some deputy. The record in the present case contains a certificate signed by the present clerk of the superior court, and attested by the seal of that court, certifying that the copy, before set forth, of the entry in regard to Coleman, in such "Naturalization Index," "is a true extract from the record of naturalizations of this court, remaining in my office, to date," which date is November 22d, 1878. When a certificate of the clerk of a court, under its seal, certifying that a book is a "record of naturalizations" of the court, is presented and accepted as evidence of the existence in the book, of the original entry of which a copy is annexed to the certificate, and no evidence is produced that the signature of the clerk is forged, or that the seal is not an impression from the true seal, or that the book has no existence, or that the entry is not in it, and when it appears that the book is in the office of the clerk of the court, and has on it and in it marks designating it as the property of the court, and as containing transactions of the court, and when the entry in question in it corresponds with the contents of papers on file in the office of the clerk of the court, which papers purport to be genuine, and the genuineness of which is not impeached, and which purport to have been filed on the day when the particular transaction took place, it is a proper legal conclusion, that the court regarded the book as one of its records, and knew of its existence, and that it is not a private, unofficial book, and that it was kept by the authority and direction of the court and of its clerk, and that it was not the property of some deputy. So, too, it is a proper legal conclusion, on the same evidence, that the entry in the book was made at a proper time and by proper authority.

In regard to the oaths or affidavits on file in the superior court, it is contended, by the attorney for the United States, that it is impossible to say, from the initials of the judge alone, that he ever made any decision concerning the affidavits, or, if he did, what decision he made, or that the decision was made in court; that, even though it be conceded that he examined the affidavits, and approved them, and put his initials on them, as a fiat that they be filed, yet it does not appear that he did so when in court and acting as the court; that the absence from the regular minutes of the court of an entry that the question of the naturalization of Coleman was before the court, without proof that the omission was accidentally made by the clerk, is evidence, that, if the judge considered and passed upon the affidavits, he did so out of court; that the affidavits are ex parte affidavits, and not legal evidence; and that it is to be inferred from the affidavits that the affiants were not examined in court, but merely signed and swore to the affidavits. These positions are recited, to show that they have been considered. The oaths or affidavits are all on one page of paper, with the title at the top: "Superior Court of the City of New York. In the Matter of Peter Coleman, on his Application to become a Citizen of the United States. Minor." Each one of them purports to be "sworn in open court." The attestation sig-

nature to each jurat is, "James M. Sweeny, Clerk." This is an attestation that the oath was taken in the court, in open court, in the presence of the court, when the judge holding the court was sitting as a court. As the initials on the page are the initials of a judge who was a judge of the court at the time, and competent to hold it, it is to be presumed, from such initials, in connection with the other evidence, that he did hold the court, and that he wrote his initials as an authority to the clerk to do what is found to have been done, namely, to enter the name of Coleman in the "Naturalization Index," as admitted to citizenship, with the date, and the other matters found in the book kept, and as authority to file the oaths or affidavits, and as an assertion that the court held by him, and he while holding the court, had received the application of Coleman and acted judicially on the matters covered by the oaths or affidavits, and been satisfied by the evidence, as to the residence and character of Coleman, and had admitted him thereupon to be a citizen of the United States. As the court is to be satisfied by proof, of the existence of the necessary prerequisites to admission to citizenship, it is to be presumed, in the absence of evidence to the contrary, that Coleman and his witness deposed, on examination on oath in open court, to the several matters set forth over their respective signatures as being deposed to by them on oath, and certified by the clerk as sworn to by them in open court, and that they did so to the satisfaction of the court. None of the objections taken in respect to the affidavits are regarded as tenable.

It, therefore, appears, that Coleman was duly and legally admitted to citizenship; and that the legality of his admission was not invalidated by any act or omission which occurred either prior or subsequently to his admission. As he was legally admitted, it was proper for the court to give to him the certificate of citizenship which was given to him; and that certificate was not unlawfully issued or made. On this ground he is entitled to his discharge from arrest.

But there is another ground on which Coleman is entitled to be discharged. Even if there were such a defect in the record of the superior court as to make the certificate given to him one that was unlawfully issued or made, he was not guilty of an offence, under section 5426, unless, when he used the certificate, he knew that it was unlawfully issued or made. As it appears that he complied fully with all the conditions imposed on him as prerequisites to his admission, and that the unlawfulness, if any, was in the want of form in the record of the court, and as he received at the time from the court a certificate stating that all the statutory requisites had been complied with, and that the court had ordered that he be admitted to be a citizen, and that he was ac-

cordingly admitted by the court to be a citizen, no court would permit a jury to convict him of using such certificate knowing that it was unlawfully issued. So manifest was this, that the moment the facts were brought to the attention of this court, on the hearing on the habeas corpus, it announced that Coleman would be discharged immediately, on this ground alone. Thereupon, the attorney for the United States stated, that he did not think the evidence disclosed sufficient guilty knowledge on the part of Coleman of the defects in the certificate of citizenship, and that he consented that he should go at large. He was accordingly released from custody, but no formal decision was made, in order that the other questions presented might be argued, considered and decided.

An order will be entered discharging Coleman from custody.