2 R   232
23 SC ²366

[CHAMBERSBURG, 1828.]

## RUGGLES and others *against* ALEXANDER and ANDREW GAILY.

#### IN ERROR.

The certificate of a prothonotary, that a writ, declaration, or statement, cannot be found in his office, is admissible in evidence, to prove the loss of such papers.

The docket entries of a suit, appearance, plea, and issue, are admissible in evidence to show, that a suit has been brought; and whether the suit was an ejectment for a particular tract of land, may be proved by parol.

An agreement, admitting the defendant in ejectment to be in possession of the land in controversy, does not preclude the plaintiff from showing how the defendant got into possession.

If a deputy surveyor has included too much land within the lines of a survey, he cannot, without the knowledge and consent of the party for whom it was made, throw out a part, including cleared fields, and the best land. If he do so, the party injured is bound to apply for redress to the Board of Property, and obtain a resurvey. But, if after the survey is returned, and before application for redress is made, any third person acquires a right to the land thrown out, by actual settlement, or the purchase of a warrant, the party injured by the act of the deputy surveyor, cannot, especially if his application for redress has been long delayed, recover against such third person.

WRIT of error to the Court of Common Pleas of *Perry* county.

*Watts* and *Penrose,* for the plaintiffs in error.
*Carothers* and *Alexander, contra.*

The opinion of the court was delivered by

HUSTON, J.—On the trial of an indictment in the Court of Quarter Sessions of *Perry* county, against *Alexander* and *Andrew Gaily,* in which they attempted to defend themselves on the ground, that the place where the alleged assault and battery was committed, was their own land, &c., it appearing there was really a contest as to the ownership and possession of the property, it was agreed to withdraw the prosecution and enter an ejectment to try the right to the possession. This was approved of by the court. It is a course frequently pursued in *Pennsylvania.* A paper was drawn up and signed, of which the following is a copy:—

(Ruggles and others *v.* Alexander and Andrew Gaily.)

" It is agreed, that an indictment, now pending in the Court of Quarter Sessions of *Perry* county, against *Alexander* and *Andrew Gailey* and others, be changed into an ejectment in the names of *Alexander* and *Andrew Gaily* against the said defendants, *Eve Ruggles* and others, who are admitted to be in possession of the land in controversy, viz. a tract of land of two hundred acres, more or less, situate in *Rye* township, in the said county, and adjoining lands of *Michael Smith's* heirs, the said plaintiffs, and others. This agreement is not to affect the actual possession of either party as it now stands, until this cause shall be decided. The costs of the said indictment to abide the event of this ejectment, and to be paid by the losing party. This cause shall not be transferred into the Circuit Court. The defendants now plead not guilty, and issue is joined. The cause to be put down for trial, and tried at the next term, or as soon after as possible. "

This was agreed to by the counsel for the *Gailys,* by Mr. *Smith,* and by the counsel for the *Ruggles.*

On the trial of this cause, the plaintiffs gave in evidence:—

24th of *February,* 1786, warrant to *John Gaily,* for two hundred acres of land, including his improvements, &c., to pay interest from the 1st of *March,* 1780. 14th of *May,* 1790, a survey by the deputy surveyor of two hundred and two acres and one hundred thirty-eight perches: returned to the surveyor general's office the 1st of *April,* 1802. 24th of *February,* 1786, a warrant to *Alexander Gaily,* for two hundred acres, adjoining *John Gaily:* this did not call for any improvement, interest from date. 14th of *May,* 1790, a survey by the deputy surveyor of two hundred and twenty acres, returned to the surveyor general's office the 1st of *April,* 1802.

They then showed an order of resurvey, dated the 26th of *November,* 1805, purporting to be on a petition of *Alexander Gailey,* and reciting the above warrant and survey, and "that owing to the mistakes of the then deputy surveyor, the surveys of both the said tracts interfere with, and run into, or include part of an adjoining tract of land, held and occupied, or possessed by your petitioner, under, and by virtue of his improvement right." On this the board ordered a resurvey of both the tracts, in order to avoid interference with other lands adjoining; to correct the errors and mistakes of the said former surveys, and to procure accurate returns into the surveyor general's office.

They then produced from the office of the deputy surveyor, a general or connected draft of the two surveys above-mentioned, as made on the ground by the deputy surveyor in 1790, (and proof, that the whole of the outer lines were run, and marked on the ground, and were found on the resurvey.) They also showed a warrant, the 13th of *October,* 1805, to *Andrew Gaily,* for one hundred and fifty acres of land, adjoining *Alexander Gaily* and *Samuel Davis,* calling for an improvement, and paying interest from the 1st

(Ruggles and others *v.* Alexander and Andrew Gaily.)

of *September,* 1802. Also, a draft, showing, in connexion with
the resurvey of the warrant to *John* and *Alexander Gaily,* and the
tract surveyed for *Andrew Gaily,* and which, though covering
exactly the ground taken in on the two first warrants, by the deputy
surveyor in 1790, yet located the two first very differently, and
laid *Alexander* and *John Gaily's* so as to include·the defendants'
improvements; and *Andrew Gaily's* warrant was so laid as to in-
clude a small part of the defendant's claim, situate a considerable
distance from their house and actual clearing.

They then proved, that the lines of the connected draft of the
two surveys in 1790, were found on the resurvey on the ground,
and well marked, correctly surveyed, except an error of twenty
perches in one line. They also proved, that Mr. *Smith,* father of
*Smith,* the defendant, and under whom he and the other defen-
dants claimed, was along at this resurvey, and saw the old lines,
and said, he would take up some land outside of it—the defendants'
claim is inside of it.

It appeared, that in 1790, the deputy surveyor had included six
hundred and four acres in the survey made on the two warrants of
the 24th of *February,* 1786, to the two *Gailys:* That he·sent an        '
assistant to re-examine the lines, alleging the surveys would not
close: That the returns were not made, because the fees were not
paid: That the deputy surveyor told one of the *Gailys,* he had en-
closed too much land by fifty acres, and advised them to take a
warrant for it. It also appeared, that in making *his returns,* he
threw out some of the fields to the amount of between twenty and
thirty acres, which had been cleared and cultivated before 1786:
That Mr. *Smith* had reaped grain in those fields for *Gaily,* before
1786: That the fields have been occupied by the *Gailys* ever since,
and are still: That no one of them actually resided on that part:
That the land thrown out in making the returns, is better than that
retained.

They also proved, that in 1805, the then deputy surveyor had
told Mr. *Smith,* that the land in question was thrown out by his
predecessor, in making *Gaily's* returns, and made a bargain with
*Smith* to make a settlement on it, and *Smith* to put and keep a
tenant on it, and the deputy surveyor to pay the *court expenses,*
and they to hold the·land in partnership; and, that the same deputy
surveyor, after the trial in *Carlisle,* had told the *Smiths* to com-
promise.

The defendants then gave in evidence:—

"31st of *December,* 1807, application of *Michael Smith* for two
hundred acres of land, adjoining *Alexander* and *Andrew Gaily's.*
18th of *February,* 1808, oath of Mr. *Smith.* 9th of *March,* 1808,
a warrant to Mr. *Smith* for two hundred acres of land, including
an improvement in the 1st of *September,* 1805, with interest from
that date."

The defendants further read the application of the plaintiffs for

(Ruggles and others *v.* Alexander and Andrew Gaily.)

the warrant to *Andrew Gaily;* the petition of *Alexander Gaily* to the Board of Property for the resurvey; the connected draft of the three *Gaily's* surveys, returned to the Board on that order, and rejected by the Board; and the separate returns on the two *Gaily's* warrants, made in pursuance of the said order, both rejected by the Board of Property; 2d of *October,* 1808, a *Caveat* by *Smith* against those returns, which were not then made; 4th of *June,* 1810, a decree of the Board in the premises, deciding that the original returns on *John* and *Alexander Gaily's* warrants should remain unchanged, but not deciding on the rights under *Smith's* warrant and *Andrew Gaily's.*

There was much testimony as to the time when *Smith's* actual settlement on the land in dispute commenced, and as to what that improvement was; and it was fairly left to the jury, whether previous to taking out the warrant, there ever was an actual personal settlement on the land in question by *Smith,* with the intention of making it a place of abode, and the means of supporting a family, and grain raised; or, whether it was a plain attempt to evade the law, and the residence for a short space, and with long intervals, and witnesses prepared to come to the spot and see *Smith* and his wife in the cabin during the hour they spent in it. And the law was laid down on this subject as in *Bealer* v. *Baker.*

There was also proof of the building a house within the survey made for *Andrew Gaily* in the fall of 1805, and a residence in it till the time of trial; and no objection to the charge on these improvements. It appeared, however, that in 1808, or perhaps 1809, *Ruggles* moved into *Smith's* cabin under *Smith,* and lived there till 1816.

By section eleventh of the act of assembly of the 3d of *April,* 1792, it is provided, that on the determination of the Board of Property, on any *Caveat,* the patent shall be stayed for six months, within which time, the party against whom the decision is, may bring his ejectment, &c. &c.: (perhaps this section only applies to decisions of the Board on titles commencing after the act.) The plaintiff, however, to show that it was no bar to their claim, offered to give in evidence the copy of a record in *Cumberland* county. The evidence offered, was the docket entry of the suit, the appearance, plea, and issue, the swearing of the jury, and their verdict for the plaintiff.

A motion was made for a new trial, on which there was no decision, and marked, continued till the time of the extract certified. The officer certified, that on diligent search, neither the summons in ejectment, nor statement, could be found in his office: That what he had copied, was all that remained of record there; and offered to prove, that this ejectment was for the lands now in dispute. The court admitted the evidence, and the defendants excepted. This was one of the errors relied on. The plaintiffs next offered to prove, that in 1816, immediately after the trial in *Cumberland* county,

(Ruggles and others *v.* Alexander and Andrew Gaily.)

the defendants left the possession of the premises: That the plain-
tiffs entered into possession, and were in the actual and peaceable
possession until a short time before the indictment, when the defen-
dants, by fraud and force got possession. This was objected to, and
admitted by the court. This was the next error relied on.

I shall notice these exceptions to testimony here.

In this state, our judicial proceedings are evidenced by the writ
or summons which issues to the sheriff, on which he endorses his
return, and the writ so endorsed is filed.    A declaration is drawn,
and this is filed by the prothonotary. The appearance of the defen-
dant is entered on the docket on which the prothonotary had enter-
ed the names of the parties, and nature of the suit at the time he
issued the writ. The recognisance of special bail, if there is any, is
entered to this suit on the docket, and entered very briefly.    The
pleas, and replications, and issue, are entered on this docket, or
rather, according to our usage, a short note of them is entered; and,
unless in special cases, are never drawn up at length, or to be
found any where else than on the docket. The swearing of the jury;
their names and verdict are first entered in the minutes of the court
book, but are transferred to the docket; and there the motions for
new trials, &c. are found; and there the judgment is entered.    In
short the docket is our record, and contains every thing except the
writ, the *narr.*, and executions. To draw up the whole on a roll, or
otherwise, to make out the recognisance of special bail, the pleas,
replications, and issues, at full length, except in some particular cir-
cumstances, is unknown, since a copy of the docket is so far a copy
of the record. If the writ, or *narr.*, is lost, the law, as to a record,
or part of a record lost, is neither new nor disputed.    But the ob-
jection here seems to be, that the proof of loss of the writ, &c. was
only the certificate of the officer, and it was said, the oath of some
person who had searched for it, would have been better; and that a
negative certificate is not known to the law.    I have nothing to do
with the laws of other states or countries, but it is the constant
usage to receive a certificate of one of the officers of the land office,
that a warrant, or return of survey cannot be found in their respec-
tive offices, and such certificate has been decided in this court to be
sufficient to let in secondary evidence.    So, if a deed is lost, a cer-
tificate of the recorder of the proper county, that it is not to be
found on record in his office, is part of the proof made to let in
secondary evidence of its contents.    And in 13 *Serg. & Rawle,*
there is a decision, which goes the whole length of deciding this
point; and further, there have been other decisions on this subject
not yet printed. The evidence offered, however, did not show
a judgment of the court.    It was not necessary it should.    It was
only offered to show, that a suit had been brought; and the docket
entry of the suit, appearance, and plea, and issue, was sufficient for
this; but it was said, what was shown did not prove it to be an
ejectment for this land.    To this I answer, that whether a former

(Ruggles and others *v.* Alexander and Andrew Gaily.)

suit was for the same cause of action, is often, too often, the subject of parol proof; and to be proved in no other way.   In all actions of *assumpsit*, and, I may add, in all actions of ejectment, no other proof can be adduced.

The next bill of exceptions was, admitting evidence as to the manner in which the defendants got into possession.   And it was argued, that the agreement to enter this suit, in which, "it is admitted the defendants are in possession of the land in controversy," precluded this testimony.   But we are of opinion, this was only intended to save the trouble of proving them in possession, at the trial.   To admit the defendants to be in possession is one thing; to prove how they got, and whether they are entitled to possession, is another and very different thing.   The right to possession is the matter trying, and this right can only be decided, by proving the nature of the possession, the time when, and the manner how it was obtained; in short, whether it is by right or by wrong.   In this state, lands are often held exclusively by possession.   If a man enter on vacant land, he acquires a right to it.   If he enters on appropriated land, he is a trespasser.   There was no error in admitting this proof.

Under an act of assembly of this state, and the practice of our courts, the defendants proposed no less than nine propositions to the court; on each of which, they were requested to deliver an opinion to the jury; and errors were assigned in the answers to these propositions.   The first of these propositions included the point on which, in fact, the whole cause turned: and the answer was correct.   It was proved so incontestably, as not to he disputed, that Mr. *Lyon*, in 1790, included the land in question in the survey made for the two warrants of *John* and *Alexander Gaily*.   Under the circumstances of this case, and the facts proved, it is not material to inquire whether he could have returned the whole on these two warrants, then in his hands.   In *Blair* v. *M'Kee*, 6 *Serg. & Rawle*, 193, it was said, that where a person has a right, by improvement fairly established and designated, a deputy surveyor may legally survey for him four hundred acres, and ten *per cent.* over, although his warrant does not call for so much.   See also *Davis* v. *Kefer*, 4 *Binn.* 162.   I think there may be cases in which this would be doubtful; but the general position is not questioned, and it is not material in this case; for the deputy surveyor did not so return, nor was he asked to do so.   It was proved, that he told one of the *Gailys* that he had included too much, and must throw off fifty acres; but no proof that he asked them where he should throw it off, or that they directed him.   His returns in 1802, show, that he did leave out of the returns a large portion included in the survey on the ground; and in this part so left out, were two fields, and part of two other fields, then, and ever since in the occupation of *Gaily*.   The judge told the jury, if this part was left out by the direction of *Gaily*, or if after it was left out, they knew it, and assented to it,

they were bound; but if done without consulting them, if they never assented to it; if it included their cleared fields, and better land than ·some of what was included, they were not bound by this act of the deputy surveyor; but that they were bound to apply for redress to the Board of Property, and obtain a resurvey: That if, after the return, and before their application for redress, any other person acquired a right to the land thrown out, by actual settlement, or purchase of a warrant, they could not, especially if they had delayed their application for redress a long time, recover from such person: That the return of the deputy surveyor must be taken *prima facie* to be right, and with their consent; but that proof might be given, that it was not right nor by consent: That the jury were to decide on this matter, not from the facts selected by the defendants' counsel, but from all the facts and circumstances proved in the cause, and in this there was nothing of which the defendants have a right to complain. If the Board of Property refuse to give redress, their decision is not final. The matter may be brought before a court and jury, whose decision is, by the eleventh section of the act of assembly of the 3d of *April,* 1792, to determine the rights of the parties, and to determine the further proceedings of the officers of the land office. The jury, (and a former jury also,) have found for the plaintiffs, and if this point is with the plaintiffs, all the others are also with him, or immaterial. If the plaintiffs had a right to this land by his original settlement, and warrant on that settlement, or on his other warrant of the same date, and a survey made on the said warrants; no deputy surveyor could deprive him of it. A deputy surveyor must consult the owner as to the part to be thrown out, when it is necessary to throw out. He cannot at his pleasure decide what the owner shall keep, and what he shall lose, even of the woodland; much less can he deprive a man of his cleared fields, and the best timber land. No intentional injustice is attributed to the deputy surveyor in this case, and I suppose there was none. I suppose he did it in his office, without knowing whether it was good or bad land which he threw out; but that does not alter the case; unless acquiesced in, it does not affect the right of the owner. To be sure, the owner is bound also to attend to this matter; it is his affair, and it will not do to say, he did not know of his own return of survey. In a reasonable time he must make his objections, and he must not permit another person to expend money or labour without notice. But nothing of this kind occurred here. He was still in the occupancy of his fields, and he presented his petition before *Smith,* under whom the defendants claim, had made any progress. *Smith* knew, or suspected how the matter was, and what was to follow, for his first act was to engage with a partner who was to pay the expense of the lawsuit: he was then any thing but a purchaser without notice.

As to the small part claimed under the warrant and survey of *Andrew Gaily,* the court left the question, whether the improve-

(Ruggles and others *v.* Alexander and Andrew Gaily.)

ments of *Smith,* on which his warrant was obtained, to the jury; and even if his improvements had been *bona fide,* and if (which was doubtful,) his were began before *Andrew's;* yet they were at the same distance from each other; no boundaries of his claim had been designated; there was no notice to *Andrew,* that he was settling within bounds intended to be included in *Smith's* improvements; and if there was nothing more, I do not see his preference over *Andrew.* But when we consider that *Andrew* called for an improvement, made in 1802: That there was proof of an old improvement within his claim, though the witness did not state the date of it; and when we consider, that *Smith's* improvement, such as it was, was not on vacant land at all, but on land of *Andrew Gaily's,* there was nothing wrong in the charge or the verdict as to this part; for the facts, as to the improvements being *bona fide,* or colourable, were fairly left to the jury. And if *Smith* had no title at all, even admitting the land to be vacant, until he put *Ruggles* on the land in 1809, the subsequent residence of *Ruggles* could not relate back to devest the right, *Andrew's* right by settlement and warrant in *October,* 1805.

It is unnecessary to go through the other points. They only became material if those noticed were found in favour of the defendants. They were predicated on a statement of facts, which must have been found not to be a true statement of facts, or the verdict must have been the other way; or, on a supposition, that in law, the *Gailys* were bound by the survey, as returned. Now, they were not bound, except as stated above. There was, however, no error in the answers to them. The Court of Common Pleas, with great patience, followed each of them, and with precision, discriminated what the law would be in the event of the facts being found one way or the other. As the opinion on these points was peculiar to a statement of the circumstances very peculiar, and not likely to occur soon again, I shall not labour through the whole of them.

Judgment affirmed.