## No. 9811.

JOHN CHAFFE & SONS ET AL. VS. SAMUEL F. WALKER.—EDWIN BATES & CO. INTERVENORS.

A judicial mortgage takes effect from the date of the recordation of the judgment in the mortgage book of the parish, where the immovables of the debtor are situated, and this rule applies to cases where the judgments are rendered in a country parish at the same term of court.

Article 555, C. P., has no bearing on the question, and does not conflict with the articles of the Civil Code on the subject of judicial mortgages.

APPEAL from the Tenth District Court, Parish of DeSoto. Hall, J.

---

*E. W. Sutherlin* for Plaintiffs and Appellants.

*Bayne & Denègre* on the same side:

A judicial mortgage results from recording a judgment by confession. A debtor may confess judgment in favor of his creditor, and by this confession consents to the immediate signing of the same by the judge, and waives the delay for a new trial. The recording of such a judgment operates as a judicial mortgage, and this is true in the several judicial districts of the State, as it is in the parish of Orleans, or in the parish of Caddo, which constitutes the First Judicial District mentioned in Art. 555 of the Code of Practice. 11 Ann. Rep. 100; 12 Ann. Rep. 431.

The delay for motions for new trial and for appeal may be waived, such delays are personal to the debtor, and he may waive them by non-action or by special agreements. 15 Ann. Rep. 478, and Martin's Rep., New Series, 234.

The rank of all mortgages in this State is determined by actual registry, and the articles of the Civil Code in the chapter and section relating to mortgages and judicial mortgages

defines how such mortgages are created and the order of their rank.  Civil Code, 3287
3322, 3342; 29 Ann. Rep. 323; Succession of Dickson, 37 Ann Rep. 797.

*J. C. Pugh* and *Kennard, Howe & Prentiss* for Intervenors and Appellees :

All judgments rendered, signed and recorded during the same term of the district court in
the country parishes take effect as judgments, and operate as judicial mortgages, from
the last day of the term of the court at which they are rendered.  C. P. 555; 29 Ann.
518; 35 Ann. 285.

The opinion of the Court was delivered by

TODD, J.   The plaintiffs and intervenors are judgment creditors of
the defendant.

Their judgments were rendered at the same term of the district
court of DeSoto.

The judgments in favor of the plaintiffs (John Chaffe & Sons, and
Nelson McStea), were recorded in the mortgage record book of said
parish on the 3d of April, 1883, and that of the intervenors on the 20th
of the same month.

The only question for our determination is whether the judicial
mortgages in favor of these parties (plaintiffs and intervenors), oper-
ate concurrently on the property subject to the mortgages, or are the
plaintiffs' mortgages, being first of record, entitled to precedence.

From a judgment decreeing that they were of equal rank, and op-
erated concurrently on the property, the plaintiffs have appealed.

The judgment of the lower court is based on the construction given
by the judge to art 555 of the Code of Practice, which reads :

"All judgments rendered  *  *  *  shall be considered as having
effect only from the last day of the term, whatever may be the day on
which they shall have been signed."   The judge concluding that as a
judicial mortgage results from the recordation of a judgment, that it
only becomes operative when the judgment goes into effect.

The counsel for the plaintiffs contends that the question when a
judicial mortgage takes effect or becomes operative is in no wise de-
pendent on that article or any other provision of the Code of Practice,
but is to be determined entirely by the articles of the Civil Code on
the subject of the registry and rank of mortgages.

This precise question is for the first time before this court for adju-
dication.  We are pointed to the decisions—29 Ann. 518; 35 Ann.
285—as conclusive of the point.   These decisions are to the effect only
that prescription against judgments begins to run from the last day of
the term at which they are rendered; which we do not consider as de-
termining the question.

The articles of the Civil Code referred to bearing on this point are as follows :

Art. 3322. "The judicial mortgage takes effect from the day on which the judgment is recorded in the manner hereafter directed."

Art. 3323 : "If there be an appeal from the judgment, and it is confirmed, the mortgage relates back to the day when the judgment was recorded."

Art. 3329 : "Among creditors, the mortgage, whether conventional, legal or judicial, has force only from the time of recording it"

Art. 3358 : "The creditors whose inscriptions have been made on the same day possess a concurrent mortgage, and no distinction is made between the inscription made on the morning or that made in the evening   *   *   *   ."

If it were not for the article of the Code of Practice above quoted, not the slightest doubt could exist that the judicial mortgage is in force from the day on which the judgment is recorded, and that only those can have concurrent mortgages who have recorded their judgment on the same day, so plain, positive and unambiguous are the declarations of the Civil Code in the above articles on this subject.

After a thorough consideration of the question, and an examination of all the authorities in any way bearing on it, we have reached the conclusion that there is not a real conflict in the articles of the two Codes, and that the articles last above cited are not controlled or affected by the article of the Code of Practice quoted and relied on by the counsel for the intervenors.

It is to be considered that the Code of Practice is intended and designed to establish rules of civil procedure. Thus it defines what actions are, how they are prosecuted until they culminate into judgments, what those judgments are, and how they may be enforced or executed, and treats of all matters germane thereto. On the other hand, the Civil Code treats of legal rights that give rise to actions and the different kind of contracts and obligations, and the manner in which they are created and preserved, and other kindred subjects. It is easily perceived that the whole subject of mortgages,—how created and in what manner to be registered and the purpose of registry, etc., —belongs exclusively to the latter Code.

This Code declares, as shown above, that the inscription of a judgment in a certain book, and in an office designated, gives rise to or creates a mortgage. It is not the judgment *per se* that constitutes the mortgage, but its inscription in the mortgage as prescribed ; for the Code of Practice, art. 545, provides that :

Definitive judgments, though entered on the docket of the judgments of the courts, shall not affect the property of the person against whom such judgments have been rendered;" but it is added, "that such judgment must be recorded at the office of mortgages in order to give the party a judicial mortgage." From which latter clause it is plainly inferable that such final or definite judgment, *when* so recorded, does give a judicial mortgage.

But it is contended that there is no judgment; that it does not come into existence until the last day of the term of the court at which it was rendered. It seems paradoxical to say that a judgment which the law terms final and definite, which is signed by the judge, that when it is thus rendered and signed, and is final, definite and conclusive between the parties, that it still has no existence! C. P., 539, 546.

When a judgment is thus rendered and signed "it becomes the property of him in whose favor it is given, and the judge cannot alter it except in the mode prescribed by law." C. P. 548.

There is another article to be found under the head of " appeals " that throws additional light on the true intent and meaning of article 555 touching the expression therein " that judgment shall be considered as having effect only from the last day of the term."

. It is article 575, one clause of which provides (quoting) : " That in the country parishes no execution shall issue in cases where an appeal lies until ten days after the adjournment of the court by which the judgment was rendered, within which delay a party may take a suspensive appeal."

When we consider that in other articles the judgment when rendered is termed a definitive or final judgment, that it constitutes *res adjudicata* between the parties, and moreover construe all the articles together including the one last quoted (575), the conclusion is inevitable that nothing was meant by article 555 other than that the judgment did not become executory, and its payment could not be enforced until the time stated; and that the two articles taken together relate exclusively to the execution of judgments and appeals therefrom ; and were designed to make ample provision for suspensive appeals and to facilitate the exercise of the right of appeal, by together declaring appealable judgments inexigible not only until the last day of the term but for ten days thereafter. It is to be noted moreover that with regard to devolutive appeals, the right of appeal is for one year, not from the last day of the term, but " from the day the final judgment was rendered."

In appealable cases, a suspensive appeal renders the judgment ap-

pealed from as ineffectual and inoperative during the pendency of the
appeal and until affirmed by the appellate court as the temporary
suspension provided by art. 555 C. P., from the date of its rendition
till the last day of the term, yet no one would seriously contend during
that period of suspension—often lasting for years—that its recordation
during that term would be without force and effect.

Yet there is just as much reason to declare it inoperative for the one
period as the other.

There is another consideration that is strongly confirmatory of these
views and favors the conclusion that Article 555, C. P., in no manner
affects the question of judicial mortgages, but that that question is en-
tirely regulated by the provisions of the Civil Code. It is this:

In all sales under execution of judgments, the recorder of the parish
is required to furnish the sheriff a certificate of mortgages; the object
of which is to show what incumbrances are on the property, to estab-
lish the rank of the mortgages and privileges, and to regulate the dis-
tribution of the proceeds of sale. Of course this officer makes out the
certificate from the mortgage book in his office; that alone is relied on
for information.

Now if the rank of the judicial mortgages was not to be determined
solely by the respective dates of the record of the judgments, then the
certificate furnished would be calculated to mislead and deceive. In
fact according to the theory of the intervenors' counsel, the certificate
thus made out from the mortgage record would be false on the face of
it, and that the recorder at least so far as relates to judicial mortgages
should not have consulted his record, but should have examined the
records of the court rendering the judgment to ascertain the last day
of the term thereof, and be controlled by the knowledge thus derived
in making out his certificate! It might happen that the judgment un-
der which the property is being sold was rendered in a distant parish
from the place of sale, and then the officer would have to search the
court records of that parish to discover the vital fact that was to guide
him in making out his mortgage certificate. And sometimes it might
be the case that the judgments were rendered in several parishes,
and then investigations would have to be made in the court records
of all these parishes to obtain the requisite information for a mortgage
certificate!

It is needless to say that the law imposes no such unreasonable and
herculean tasks upon the recorders. They are required to make out
their mortgage certificates from the mortgage records in their offices,
and this requirement is essentially a legal declaration that the amount

of judicial mortgages, the rank of snch mortgages, their respective dates, and everything relating to them is to be established by such records and they alone are to be consulted.

Our conclusion is that the judicial mortgages of the plaintiffs became operative from the date of the incription of their judgments in the mortgage book—the 3d of April, 1883—and that they prime the mortgage of the intervenors inscribed on the 20th of the same month and year.

It is therefore ordered, adjudged and decreed that the judgment of the lower court, in so far as it decrees that the judicial mortgages of the plaintiffs and intervenors operated concurrently on the property subject to the mortgages or its proceeds, be annulled, avoided and reversed ; and it is now ordered, adjudged and decreed that the judicial mortgages of the plaintiffs have precedence over that of the intervenors, and that the plaintiffs are to be first paid out of the proceeds of the same, that the intervenors pay costs of their intervention in both courts, and that the judgment in other respects be affirmed.

### CONCURRING OPINION.

FENNER, J.    I do not consider that Art. 555 of the Code of Practice, has any application.    Its sole and avowed object is to regulate the *effect* of judgments.

Now, in many. States of the Union and formerly in this State, it was one of the effects of a judgment that, from its simple entry on the docket of the court, it operated a lien or mortgage upon the property of the debtor.    If that were still the case, there would be less difficulty in holding that Art. 555 would defeat such effect until the last day of the term.    But the Code of Practice has obliterated this as an effect of judgments, by declaring that " they shall not hereafter affect the property of the person against whom such judgments were rendered, all laws to the contrary notwithstanding.    Such judgments must be recorded at the office of mortgages, in order to give the party a judicial mortgage, pursuant to the provisions of the law."    Art. 545.

The "provisions of law" referred to are those found in the Civil Code, which are thus recognized and adopted by the Code of Practice, except that the latter controls and corrects the loose language of Art. 3321, which says that " the judicial mortgage is that resulting from judgments," etc , because the Code of Practice expressly declares that no such mortgage shall result from judgments.

Reading Art. 545, C. P. and Arts. 3321 and 3322, C. C. together, the clear and obvious meaning is that a judicial mortgage is that resulting

Chaffe & Sons et al. vs. Walker. ·

from the recording of a judgment, and "takes effect from the day on which the judgment is recorded in the manner hereafter directed."

Now, plaintiffs present here a judgment for money, rendered and signed by the judge and recorded in the manner directed by law on April 3, 1883, and he claims that a judicial mortgage resulted from that record and took effect from the day of record.

Intervenors say: " No; under Art. 555, C. P., the judgment must be considered as having effect only from the last day of the term. and therefore your mortgage takes effect, not from the date of record as expressly directed by Art. 3322, C. C., but only from the last day of the term of the court; and inasmuch as our judgment, though only recorded on April 20, 1883, took effect concurrently with yours, our judicial mortgage is equally concurrent with yours."

This contention of intervenors would introduce an element of uncertainty and confusion in our mortgage records utterly hostile to the whole spirit and intention of our legislation on that subject.

With regard to the rank of mortgages resulting from the inscription of country judgments, the examiner could no longer be guided by the plain land mark set by the Code of the date of record, but would be sent under a roving commission to ascertain what was the last day of the term of court at which the judgment was rendered. Such inscriptions are often made in parishes distant from that where the judgment was rendered. They last for ten years and may be indefinitely prolonged by re-inscription. Thus, a party in the parish of Plaquemines finding an inscription of a judgment rendered twenty years ago in the parish of Ouachita might be confronted with the necessity of ascertaining what was the last day of the term at which it was rendered.

This, in my judgment, is utterly untenable, and the plain alternative presented is, either that the inscriptions of these judgments took effect from their respective dates, or they did not take effect at all; and the recorder erred in admitting them to record without a certification that the term of court had expired, which, under intervenors' theory, could alone give effect to the judgment and, as an inevitable corrollary, to its inscription.

Now, although Art. 555 is an original article of the Code of Practice, it is not disputed that under the express authority of Art. 546, C. P., judgments in the country parishes have been habitually signed and recorded before the last day of the term, as was done by all parties in this very case, and our jurisprudence furnishes no precedent of any question having ever been raised as to such inscriptions taking effect from the date when made according to the express provision of Art. 3322, C. C.

The plain solution of these difficulties is found in the proposition that the validity and effect of the inscription of judgments are governed, not by the Code of Practice, but by the Civil Code; and that, under the latter, we are not concerned with any questions concerning the *effect* of judgments or when they have effect, but simply with the inquiry whether the judgment recorded *existed* as a final judgment within the meaning of C. C., art. 3321; for, if it did so *exist*, whatever its effects, the record thereof, under the unambiguous language of the code, created a judicial mortgage effective from the date of inscription.

Art. 555, C. P., must be construed with other articles in the same section, and the language thereof, that "judgments shall be consid·ered as having effect only from the last day of the term," finds important limitations.

Thus, under art. 546, the judgment was properly and validly signed by the judge before the expiration of the term; under art. 539, it was a definitive or final judgment; under articles 547 and 558, the judge could not, in any manner, alter or amend it; and under art. 548 it had become the property of the party in whose favor it was rendered and entirely beyond the control of the judge.

It follows that, notwithstanding the language of art. 555, the judgment did have many and most important effects from the moment of signature; and, in my opinion, it had all the effect necessary to constitute it a final judgment within the meaning of the Civil Code, entitled to be recorded and to operate as a judicial mortgage from the date of inscription.

I am satisfied that Art. 555 refers to effects independent of, and subsequent to, the creation and existence of the judgment, and that those effects alone, such as execution, delays for appeal, etc., are deferred to the last day of the term.

While this construction gives advantage to the diligent or fortunate suitor, such advantage is not hostile to the spirit of the law. The opposite construction gives advantage to the fraudulent debtor, who, after condemnation by final judgment, would be left a considerable period, during which he might dispose of or establish mortgages on his property, while the hands of his judgment creditor would be tied. I think he gets a sufficient advantage in the postponement of the execution, and, until the law-maker repeals or amends the present articles of the Civil Code, I shall not consent to its extension.

While it is true that, in case of conflict between the Civil Code and Code of Practice, the latter prevails; yet the two must be reconciled when possible, and only in case of irreconcilable conflict would any

court be justified in disregarding unambiguous provisions of the Civil Code.

I, therefore, concur in the decree.

### DISSENTING OPINION.

POCHÉ, J. At the April term of 1883 of the district court of De-Soto plaintiffs and intervenors respectively obtained moneyed judgments against the defendant Walker.

Plaintiffs' judgments were rendered, signed and recorded in the mortgage office on the 3d of April, and the judgment in favor of intervenors was rendered, signed and recorded on the 20th of the same month. That term of the court was adjourned on the 2d of May following.

Plaintiffs claim priority of mortgage because the judicial mortgage should date from the day of inscription of their judgments. Intervenors contend that the respective mortgages resulting from the judgments thus rendered are concurrent, because the effect of the judgments only began from the last day of the term, or from the 2d of May, 1883.

The latter views were sustained by the district judge.

That contention finds ample support in article 555 of the Code of Practice, which reads as follows: "All judgments rendered, except in the first judicial district, shall be considered as having effect only from the last day of the term, whatever may be the day on which they shall have been signed."

Under the very terms of the article, if read in the judicial mortgage under discussion, it is certain and clear that judgments rendered by the district court of DeSoto at that term could have had no effect before the 2d day of May, which was the last day of that term, *whatever be the day on which they had been respectively signed,* in other words; that a judgment signed on the 3d of April, as well as that which was signed on the 20th following, should both be considered as having effect only from the 2d of May following.

It is not disputed that the article 555 applies to all parishes in the State except the parish of Orleans.

But it is argued that the article of the Code of Practice cannot have the effect of determining rights, but merely of establishing rules of procedure, and that the case falls under the provisions of article 3329 of the Civil Code, which reads:

"Among creditors, the mortgage, whether conventional, legal or judicial, has force only from the time of recording in the manner here-

after directed." And it is contended that, as the two provisions are conflicting, the article of the Code, which is intended to create a right, must have precedence over the Code of Practice, which treats only of rules.

But the whole subject of judgments as to the manner of obtaining, rendering, signing, executing, and in other respects, of controlling them, is confessedly a question of procedure, which our law has properly and logically relegated to the Code of Practice: hence the question of regulating the effect of judgments most undoubtedly falls within its province.

Now, article 3321 of the Civil Code defines the judicial mortgage as one "resulting from a judgment." But the definition of a judgment must be looked for in the Code of Practice, and to that Code also must inquiry be directed to discover the mode by which a judgment may become, or operate as, a judicial mortgage. Hence, article 545 Code of Practice, provides: "Such judgments must be recorded at the office of mortgages, in order to give the party a judicial mortgage pursuant to the provisions of the law." The first part of the article contemplates that, without the formality of recording, the judgment shall not affect the property of the party cast. Article 3323 Civil Code is to the same effect.

The consequence of operating as a mortgage is, therefore, one of the first effects, if not the most important, which the Code attributes to a judgment. Then comes the provision that judgments shall have no effect in certain parishes before the last day of the term of the court at which they shall have been rendered, without regard to the day on which they shall have been signed. How then can it be logically argued that, notwithstanding such a direct prohibition, judgments may have the most important legal effect before the period of gestation determined by the law itself.

Article 3329 and others of the Civil Code contain no provision necessarily conflicting with the rule settled in the Code of Practice. The object of Art. 3329, as indicated by the title of the section in which it is contained, is to determine the "rank in which mortgages stand with respect to each other," and to that end it provides that all mortgages shall have force as among creditors only from the time of recording the same. But nothing in that article, and no other language in the Code, can be construed as fixing the time at which a judgment must be recorded, or the juncture at which a judgment takes effect. That rule has been left to, and can only be found in, the Code of Practice. It is there declared that in certain parishes the judgment can have no legal

effect before the last day of the term, and logically one of the effects contemplated by the law-maker must have been that which results from the recordation of the judgment.

While the article does not in terms forbid the act of recording the judgment before the last day of the term, it unmistakably means that no legal effect can flow from such recordation before that day, and that is the time of recording which the Civil Code contemplates; it does not refer to an idle or too hasty recordation, but to a legal formality, followed by legal effects. Hence, the two articles are not antagonistic, but they harmonize; the one fixing the rule, the other applying legal consequences thereto. Hence it is that in construing other laws which have certain effects to be determined by the finality of judgments, the Court has held that, in the country parishes, judgments were not final in that sense before the last day of the term at which they were rendered.

In the case of Broussard vs. Dupré, 29 Ann. 518, where the Court had to determine, in a suit to revive a judgment, the period at which the prescription of ten years should begin to run, held that it must be computed from the last day of the term and not from the date of the signature of the judgment. The Court said : " But the general provision that all judgments rendered in the courts of this State, other than those of the first judicial district, take effect only from the last day of the term of the court at which they are rendered, fixes the time when the judgment is complete and indicates the starting point when prescription begins to run against them."

The same views prevailed in the case of Boyd vs. LaBranche, 35 Ann. 285. Any other construction is equivalent to a declaration that a statute which in terms provides that certain judgments shall have no effect before a specified time, really means that they may have certain effects before that time. Such a doctrine clashes with the familiar rule that "a construction which would render useless important expressions of the law cannot be adopted ; effect must be given to them all if possible." 9 M. 635; 4 N. S. 322, 380; 2 R. 236; 3 L. 365; 16 L. 577; 14 Ann. 419.

Article 546 of the Code of Practice may also be invoked as authority for the contention that all judgments rendered in the country parishes at the same term must be understood as standing on the same footing as regards their legal and practical effect; it reads : " The judge must sign all definitive or final judgments rendered by him, but he shall not do so until three judicial days have elapsed, to be computed from the day when such judgments were given ; provided that here-

after (except in the parish of Orleans) all motions for new trials in causes, shall be made and determined, and all final judgments signed before the adjournment of the court for the term at which such causes were tried, and whether those judicial days shall have elapsed or not."

No other conclusion can be drawn from a proper construction of the several articles in our Code of Practice bearing on the question than that in country parishes, the corresponding effect of all judgments must be tested by considering the term at which they were rendered and signed, and not the particular day on which they may have been signed.

To reach any other conclusion is equivalent to an entire alteration of article 555 and other articles of the Code of Practice.

After a most laborious search, embracing an examination of every volume of our reports, I have been unable to find any case involving the proper construction of the article 555 of the Code of Practice, save and except the two cases hereinbefore referred to; from the 29th and 35th Annuals.

A careful perusal of these two decisions will show that the clear doctrine therein announced singularly clashes with the views of the majority of my associates in the instant case.

In the first of these cases, Broussard vs. Dupre, 29th Ann. 578, Chief Justice Manning, as the organ of the court, uses the following emphatic language : " Judgments rendered in the courts of the country parishes have effect only from the last day of the term, whatever may be the day on which they shall have been signed.   C. P. art. 555.

" The prescription of ten years will not apply to this suit for revival, unless the time be reckoned from the day when the judgment was signed.   The defendant urges that the day when it was signed is the day of its rendition, but that is obviously inaccurate, because a judgment is rendered always before it is signed, and in some of the country parishes the excellent practice prevailed and now prevails of signing all judgments rendered during the term on the last day thereof and not before.

" The judgment of 1867 had effect only on and from the 18th of February of that year (the last day of the term).   It could not have been used as a judgment until that time, and that must be the day when it commenced its existence, so to speak, as a judgment."

Had the court conceived the idea that the registry of the judgment at any time before the last day of the term, would have fixed the date of the judicial mortgage as taking effect on that day, it would cer-

tainly not have said that the judgment could not be used before the last day of the term, as a judgment.

The same views prevailed in the case of Boyd vs. LaBranche, 35 Ann. 285.

I feel justified in maintaining that the interpretation thus given to the article of the Code, coupled with the plain language of its provisions, has acquired the force of the rule of " *stare decisis*."

I suggest that the argument resting on the inconvenience of the law cannot be invoked to defeat its plain and unambiguous meaning.

The construction herein adopted opens the door to wrongs of greater consequence than the inconveniences sought to be averted.

It places within the reach of an insolvent debtor, who is sued at the same term of the court by several creditors, the means of giving an undue preference to one or more of them by confessing judgment in their favor, and refusing the like advantage to others, whereas a different construction would cure the evil, by placing all the judgments rendered at the same term on the same footing.

The judge himself who may desire to favor one or more of several litigants suing an insolvent debtor, may accomplish the mischief by signing some judgments at the expiration of the three judicial days, and by withholding his signature of the others until the last day of term.

I therefore dissent from the opinion and decree of the majority in this case.

Bermudez, C. J., concurs in this dissenting opinion.