# Hoffman *v.* Pittsburg.

*Municipalities—Increase of indebtedness—Expression of desire by municipal authorities—Acts of April 20, 1874, P. L. 65, June 9, 1891, P. L. 252, and May 1, 1909, P. L. 317.*

1. Before the authorities of a municipality can authorize an election to pass upon an increase in municipal indebtedness to an amount exceeding two per centum upon the assessed valuation of taxable property they must first act by giving expression, by "ordinance or vote," of their desire for the increase, in compliance with the Act of April 20, 1874, P. L. 65, and its amendments.

*Jurisdiction—Supreme Court—Municipal loan.*

2. Whether the Supreme Court will assume original jurisdiction when the validity of a proposed municipal loan is questioned will in every instance depend upon the exigencies of the case.

Argued May 5, 1910. Bill for Injunction, Miscellaneous Docket, Supreme Court, No. 143, 1910, between Adam Hoffman for himself and other taxpayers v. The City of Pittsburg, William A. Magee, Jr., Mayor, and Eustace S. Morrow, Controller. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Injunction granted.

Bill for an injunction to prevent increase of the indebtedness of the city of Pittsburg and that all proceedings and ordinances, etc., under the ordinance of September 24, 1909, be declared null and void.

The facts appear in the opinion of the Supreme Court.

*Samuel McClay*, with him *Reed, Smith, Shaw & Beal, David A. Reed, Wm. M. Robinson* and *A. E. Anderson*, for plaintiff.—The proceedings to increase the indebtedness were irregular: Barr v. Phila., 191 Pa. 438; Major v. Aldan Boro., 209 Pa. 247; Wolff Chemical Co. v. Phila., 217 Pa. 215.

*A. M. Imbrie* for David G. Gregg, intervening plaintiff.

*C. A. O'Brien* and *Lee C. Beatty*, for defendants.—The proceedings to increase the indebtedness were substantially complied with: Major v. Aldan Boro., 209 Pa. 247; Barr v. Phila., 191 Pa. 438; Millvale Boro., 162 Pa. 374; Morrellville Borough's Annexation, 7 Pa. Superior Ct. 532.

OPINION BY MR. JUSTICE BROWN, July 1, 1910:

Our assumption of original jurisdiction in this case is not to be regarded as a precedent whenever the validity of a proposed municipal loan is questioned. Whether such jurisdiction is to be assumed will in every instance depend upon the exigencies of the case.

The constitutional provision as to the indebtedness of a municipality is that it shall never exceed seven per

centum upon the assessed value of the taxable property
therein, and there shall be no increase of its indebtedness
to an amount exceeding two per centum upon such as-
sessed valuation of property "without the assent of the
electors thereof at a public election in such manner as
shall be provided by law." The first statutory provi-
sion regulating the proceedings to be taken by a mu-
nicipality when undertaking to increase its indebtedness
to an amount exceeding two per centum, and not exceed-
ing seven per centum, upon the assessed valuation of
taxable property is in the Act of April 20, 1874, P. L. 65.
It is, that whenever the corporate authorities of any city,
"by their ordinance or vote, shall have signified a desire to
make such increase of indebtedness," they shall proceed
to give the notice required by the act that the question of
the increase of the indebtedness will be submitted to the
electors on the day of the municipal or general election,
unless more than ninety days elapse between the date of
"the ordinance or vote desiring such increase and the day
of holding the said municipal or general election." This
provision reappears, totidem verbis, in the amending Act
of June 9, 1891, P. L. 252, and is so repeated in the Act
of May 1, 1909, P. L. 317. In view of this foregoing clear
statutory provision, twice repeated, the first step to be
taken by a municipality in undertaking to increase its
indebtedness is action by its corporate authorities, by or-
dinance or vote, expressive of their desire that the increase
shall be made. With the wisdom of this legislation courts
have nothing to do. In Hoyt v. City of East Saginaw
et al., 19 Mich. 39, in holding that the failure of the com-
mon council of the city to take certain preliminary action
required by the statute had vitiated all that it did, it was
said by COOLEY, C. J., "We have no authority to treat
any part of a legislative enactment which is not ambigu-
ous in itself and is capable of reasonable application, as so
far unimportant that it is a matter of indifference whether
it is complied with or not. We must suppose the legisla-
ture saw sufficient reason for its adoption, and meant it

to have effect; and whether the reason is apparent to our minds or not, we have no discretion to dispense with a compliance with the statute. . . . The declaration of the necessity for the improvement is a distinct act from and precedes the order that the improvement shall be made. It is the commencement of the proceeding, and is as indispensable to give the Council jurisdiction as is process or the voluntary appearance of parties in civil actions to give jurisdiction to a court. It is the first of several steps, which if duly and regularly taken, may result in fixing a lien upon the property of the citizen, and even in depriving him of it against his will. This step having never been taken, the whole proceeding is a nullity."

The constitutional requirement is that municipal indebtedness is to be increased to an amount exceeding two per centum upon the assessed valuation of taxable property only with the assent of the electors at a public election in such manner as shall be provided by law, and the statutory provision is that before such election can be authorized by the municipal authorities they must first act by giving expression, by "ordinance or vote," of their desire for the increase. If it were our province to pass upon the wisdom of this provision, we would commend it. To the select and common councils of a city, as their representatives, its electors commit the direct supervision of the municipal affairs and what ought to be done or not done by the city should always, in the first instance, be passed upon by those whose special duties are to inform themselves as to the municipal needs and who are presumed to be able to act with more intelligence than the ordinary elector upon whatever affects the welfare of the municipality. Councils are deliberative bodies, possessing means not possessed by the electors generally of obtaining knowledge upon every subject relating to the welfare of the city, and the statutory requirement that they first signify their desire for an increase of indebtedness gives to the electors whom they represent the benefit of their deliberate judgment, after duly considering the

necessity of making improvements and the cost thereof, that the increase ought to be made. All this was denied the electors of the city of Pittsburg in the present case. Councils utterly ignored their duty of expressing to the electors their desire that the indebtedness should be increased and plunged in medias res by passing an ordinance authorizing a submission of the question of the proposed increase to the electors at the general election held on November 2, 1909. From one end of this ordinance to the other there is to be found no expression of the wish or desire of councils as to the proposed increase. Purposely or otherwise, they avoided the responsibility placed upon them by the law. What it required them to do before they could submit the question of increase to the electors, they failed to do, and the ordinance of September 24, 1909, must fall. The foundation necessary for it had not been laid. It is not to be taken as evidence of an expression of the desire of councils. That must have been expressed by a separate and independent action: Hoyt v. City of East Saginaw et al., supra.

The various other questions raised by the complainants need not be now considered. The authorities of the city of Pittsburg may or may not, by ordinance or vote, signify their desire to increase the city's indebtedness, and, if they should, it is not for us now to act as an advisory board to them, telling them what they must subsequently do. They know what objections have been raised by these complainants, which may be renewed by them or other taxpayers, if subsequent municipal action on the same subject should be open to the same objections.

And now, July 1, 1910, upon due consideration of complainants' bill as amended and the answers of the defendants thereto, it is ordered, adjudged and decreed that the ordinance purporting to have been adopted by the councils of the city of Pittsburg on September 24, 1909, and approved by the mayor of the said city on September 25, 1909, is null and void, and the said city of Pittsburg, William A. Magee, Jr., its mayor, and Eustace S. Morrow,

controller thereof, and all other officers or agents of the said city are perpetually enjoined from creating, or attempting to create, any increase of indebtedness of the said city pursuant to the said ordinance or the election held thereunder, and from executing, issuing, advertising or selling any bonds of the said city pursuant to the said ordinance or election, the costs to be paid by the defendants.