# Swartz, Appellant, v. Carlisle Borough.

*Constitutional law—Special legislation—Retrospective legislation—Municipal indebtedness—Defective election—Validating act—Act of June 19, 1911, P. L. 1044.*

1. The Act of June 19, 1911, P. L. 1044, validating all municipal elections for increasing indebtedness which were invalid through failure to observe certain statutory requirements, is not special legislation, and does not violate Article IX, Section 8, of the Constitution, which forbids municipalities to increase their indebtedness to an amount exceeding two per cent. upon assessed valuation of property without the assent of the electors at a public election.

2. The fact that the municipal authorities did not signify their desire for an increase of indebtedness before the election, or that the ballots were not certified or signed by the county commissioners, or that full, complete and proper return of the votes had not been made to the court, or counted by the court, renders the election invalid; but as these irregularities are all matters of detail relating to legislative and not to constitutional provisions the legislature has the power to cure them by subsequent retroactive legislation, inasmuch as it could have dispensed with such requirements altogether.

3. It is settled law in Pennsylvania that the legislature has the power to legislate retrospectively on all matters not penal nor in violation of contracts not expressly forbidden by the Constitution.

Brown, Mestrezat and Stewart, JJ., dissent.

Argued April 22, 1912. Appeal, No. 260, Jan. T., 1912, by plaintiff, from decree of C. P. Cumberland Co., Jan. T., 1911, No. 1, dismissing bill in equity in case of G. Wilson Swartz v. Carlisle Borough. Before Brown, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Bill in equity to enjoin the issuing of municipal bonds. Before Sadler, P. J.

The case turned upon the constitutionality of the Act of June 19, 1911, P. L. 1044, the material provisions of which are quoted in the opinion of the Supreme Court.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*E. M. Biddle, Jr.,* with him *Merrill F. Hummel,* for appellant.—A statute which is repugnant to the Constitution is void no matter whether on its face it appears to be curative or not: Vanhorne v. Dorrance, 2 Dallas 304; Sharpless v. Phila., 21 Pa. 147; Rainsburg Borough v. Fyan, 127 Pa. 74.

The Act of 1911 is special legislation: Com. v. Casey, 231 Pa. 170; Com. v. Carey, 2 Pa. C. C. R. 293; Frost v. Cherry, 122 Pa. 417; Sample v. Pittsburgh, 212 Pa. 533; Morrison v. Bachert, 112 Pa. 322; Anderson v. Hill, 54 Mich. 477 (20 N. W. Repr. 549); Bay City v. State Treasurer, 23 Mich. 499.

The court in holding that the Act of 1911 cured all defects complained of by plaintiff, violated the rights of appellant to have his case determined by the law existing at the time the action was brought and was not in due course of law: Kay v. P. R. R. Co., 65 Pa. 269; Craig v. Kline, 65 Pa. 399.

A right of action is a vested right within the constitutional provision: Lewis v. P. R. R. Company, 220 Pa. 317; Kay v. P. R. R. Company, 65 Pa. 269.

The Constitution clearly provides, that the debt shall only be increased by an election according to law. An election which requires a legislative enactment to perpetuate its apparent object falls short of the basic mandate of the organic law of the land and is void.

*S. B. Sadler,* with him *A. R. Rupley,* Borough Solicitor, for appellee.—The courts have frequently passed upon the validity of retroactive curative acts and unless the legislation was found to be expressly prohibited by the Constitution, or was in violation of a contract right their validity has been sustained: New Brighton Borough v. Biddell, 14 Pa. Superior Ct., 207, affirmed in

201 Pa. 96; Allegheny v. Stewart, 43 Pa. Superior Ct.
534; Whitney v. Pittsburgh, 147 Pa. 351; Donley v.
Pittsburgh, 147 Pa. 348; Schenley v. Com., 36 Pa. 29;
Com. v. Marshall, 69 Pa. 328; Hewitt's App., 88 Pa. 55;
Weister v. Hade, 52 Pa. 474; Grim v. Weissenberg School
District, 57 Pa. 433; Journeay v. Gibson, 56 Pa. 57;
Tate v. Stooltzfoos, 16 S. & R. 35; Philadelphia v. Hey,
20 Pa. Superior Ct. 480; Underwood v. Lilly, 10 S. & R.
97; Lane v. Nelson, 79 Pa. 407; Hepburn v. Curts, 7
Watts 300; Bleakney v. F. & M. Bank, 17 S. & R. 64.

. The cases cited by appellant where at all applicable
are those in which vested property rights were annulled,
as in Lewis v. P. R. R. Co., 220 Pa. 317; Kay v. P. R. R.
Co., 65 Pa. 269; Menges v. Dentler, 33 Pa. 495.

Where the law-making body can enact legislation it
has the power to change the conditions and cure the de-
fects: Rebman v. School District Borough of Crafton
Boro., 201 Pa. 437.


OPINION BY MR. JUSTICE ELKIN, October 14, 1912:

At a special election held for the purpose, a majority
of the electors voted in favor of increasing the indebted-
ness of the appellee borough for the purpose of con-
structing a main sewer, installing a disposal plant, and
providing for proper drainage. The returns represented
the will of a majority of the electors as expressed by
their votes at the election. There is no charge of fraud,
or of unfair methods in the conduct of the election, nor
is it asserted that a majority of the voters did not favor
the increase of indebtedness for the purposes stated. It
is urged, however, that the election so held was ille-
gal because certain statutory requirements were not ob-
served in holding the same, and that the election itself,
and all subsequent proceedings, should be declared void
in law by reason of these defects. This bill was filed by
a resident tax payer for the purpose of enjoining the
borough and its officers from issuing bonds for the pur-
poses stated, and from carrying out the provisions of the

ordinance providing for the increase of indebtedness. An amended bill was filed and some questions are raised as to whether the amendment was proper, but in the view we take of the case it is not necessary to pass upon these questions, although in some respects they may have substantial merit. Without reference to the pleadings, the real question in controversy is the effect to be given the validating Act of June 19, 1911, P. L. 1044. The matters complained of are as follows: that the ballots were not properly endorsed and certified by the county commissioners; that the borough council had not by separate vote expressed its intention or desire to increase the debt; that the vote was not counted by the court; and that the ballot boxes were not furnished by the county commissioners and deposited after the election with a justice of the peace. There can be no doubt that all of these defects, if they be deemed material, except the last, were intended to be cured by the Act of 1911. If this act is a valid exercise of legislative power, it necessarily follows that the learned court below took a proper view of the case, and that the decree entered there should be affirmed here. The act provides that all elections heretofore held by any county, city, borough, township, school district, or other municipality, for the purpose of voting for or against an increase of indebtedness under the Act of April 20, 1874, P. L. 65, and its amendments, where the majority of the votes cast at such election was in favor of such increase, "be and the same are hereby ratified, confirmed, and made valid, notwithstanding the authorities of such county, city, borough, township, school district, or incorporated district, did not, by separate and independent action prior to the ordinance or vote in pursuance of which notice of the election was given to the electors, signify their desire for such increase of indebtedness, or where the ballots were not certified or signed by the county commissioners, or where full, complete and proper return of the votes was not made to the proper court, or counted

by the court, and, notwithstanding any defect or informality in the manner of giving notice of such election, all bonds issued or to be issued in pursuance of every such election are hereby made valid, binding obligations of every such county, city, borough, township, school district, or incorporated district." The act is general in its terms and applies to every county, city, borough, township, or other municipal division of the commonwealth, where the conditions exist upon which its provisions are intended to become operative. It is not restricted to any particular county, or city, or borough, or township, or other municipal division, and is therefore a general act as contradistinguished from a local law. It deals with the general subject of the increase of municipal indebtedness and cannot be regarded as special legislation in a legal sense in so far at least as the subject matter of the act is involved. It is argued, however, with much force and ability, that the Act of 1911 violates Article IX, Section 8, of the Constitution, which provides that a borough cannot increase its indebtedness to an amount exceeding two per centum of the assessed valuation of property located therein, "without the assent of the electors thereof at a public election in such manner as shall be provided by law," and that failure to observe the requirements of existing election laws renders the election invalid, and that these defects cannot be cured by subsequent legislation. In the case at bar there was an assent of the electors at an election held for the express purpose of giving the voters an opportunity of expressing their will upon the question of increasing the borough indebtedness, and in this respect there was a compliance with the constitutional mandate. It is true some of the statutory requirements relating to the manner of holding the election were not observed, but these were all matters of detail relating to legislative and not to constitutional provisions. The Constitution gave the legislature the power to prescribe the manner in which such elections

shall be held, and the legislature from time to time has exercised this power by changing old methods and prescribing new ones. The form of the ballot, the method of counting the vote, the requirements as to notice of intention, custody of the ballot boxes, and all other details connected with the holding of the election, are clearly within the scope of legislative power. It has been decided over and over again that the legislature may by subsequent act, validate and confirm previous acts of a municipal corporation, which would otherwise be invalid. It is settled law in Pennsylvania that the legislature has the power to legislate retrospectively on all matters, not penal, nor in violation of contracts, not expressly forbidden by the Constitution: Weister v. Hade, 52 Pa. 474; Grim v. School District, 57 Pa. 433; Hawkins v. Com., 76 Pa. 15. The Act of 1911 does not relate to penal matters, is not in contravention of contractual rights, and nothing attempted to be done by this act is expressly forbidden by the Constitution. It would seem to clearly follow that the legislature acted within the scope of its power in passing the retroactive curative act in question. Defective acknowledgments have been frequently validated by subsequent legislation: Tate v. Stooltzfoos, 16 S. & R. 35; Journeay v. Gibson, 56 Pa. 57. Municipal assessments, uncollectible by reason of defects in the proceedings, have been cured by subsequent retroactive acts: Com. v. Marshall, 69 Pa. 328; Donley v. Pittsburgh, 147 Pa. 348. Defects in tax levies have been cured in the same way: Weister v. Hade, 52 Pa. 474; Hewitt's App., 88 Pa. 55. So, too, it has been held, in a judicial proceeding, where jurisdiction had attached, but on account of a formal defect in the proceedings they would have to be declared invalid, the legislature may subsequently correct such defect and provide a remedy: Lane v. Nelson, 79 Pa. 407. Our reports are full of cases to the same general effect. The true rule seems to be, as we gather it from our own cases, and from decisions in other jurisdictions, and

from text writers generally, that where the omission to be cured is some act which the legislature might have dispensed with by a prior statute, the courts will construe the curative act so as to give it the retrospective operation intended. It will not be seriously contended, we assume, that the legislature could not have dispensed with all of the matters relating to the election complained of in the present bill, and if these requirements could have been dispensed with by a prior statute, under the rule above stated, they can be cured by subsequent retroactive legislation. The legislature intended by the Act of 1911 to cure these defects and to validate elections so held. We think it was a valid exercise of legislative power and must be sustained. The same rule is recognized and followed in many other jurisdictions. Acts validating defective elections and legalizing municipal bond issues have frequently been held to be constitutional: Springfield Safe-Deposit & Trust Company v. Attica, 85 Fed. Repr. 387; State v. Brown, 106 N. W. Repr. 477; Witter v. Polk County, 112 Iowa 380; Schneck v. Jeffersonville, 152 Ind. 204; Read v. Plattsmouth, 107 U. S. 568; Bolles v. Brimfield, 120 U. S. 759. It is argued for appellant that Article IX, Section 8, of the Constitution, prohibits retroactive legislation relating to the increase of municipal indebtedness because of the provision which requires the assent of the electors, to be expressed "at a public election in such manner as shall be provided by law." This position was answered by the court below in Rebman v. School District, 201 Pa. 437, wherein it was said: "The evident meaning of the section is that the election held for such purpose is subject to such regulation as the legislature may thereafter prescribe." The decree in that case was affirmed by this court on the opinion of the court below and we are therefore committed to this view of the law. This would seem to be a complete answer to the contention that the Constitution forbids what it expressly authorized the legislature to do.

The other matters complained of relate to minor details and are without substantial merit under the facts and the law. The expression of the popular will of the people upon the question of an important municipal improvement affecting the health and convenience of the inhabitants, should not be defeated because the election officers did not deposit the ballot boxes with a proper officer within a certain time after the election, especially is this true, when no fraud is charged; and the result of the election is in no way questioned. Failure to perform such duties on the part of election officers may subject them to penalties, but in the absence of fraud should not be held sufficient to set aside the election itself. Where tally papers were not returned as required by law, it was held that failure to perform this duty did not invalidate the election itself: Mann v. Cassidy, 1 Brewster 11.; Ewing v. Filley, 43 Pa. 384.

We, therefore, conclude that all matters of substance about which complaint is made in the present bill, as to the manner of holding the election, were validated by the Act of 1911 and that the bill was properly dismissed.

Decree affirmed at the cost of appellant.

DISSENTING OPINION BY MR. JUSTICE BROWN:

The learned chancellor below correctly said that as the council of the Borough of Carlisle had not by a separate ordinance or vote signified its desire to increase the indebtedness of the municipality, the election of February 21, 1911, was fatally defective, and he would be compelled to so hold but for the validating Act of June 19, 1911, P. L. 1044. The election was void; it was a nullity: Hoffman v. Pittsburgh, 229 Pa. 36; Bullitt v. Philadelphia, 230 Pa. 544. An election upon the question of the increase of municipal indebtedness is a constitutional one, for the mandate of the Constitution is that no municipality shall increase its indebtedness to an amount exceeding two per centum upon assessed valuation of property, without the assent of the electors

thereof at a public election in such manner as shall be provided by law. When this election was held the manner in which it was to be held had been provided by law, and certain statutory requirements, mandatory in character, were to be complied with before it could be held. These were totally disregarded, and, as the constitutional mandate that the election should be held as provided by law was ignored, the election was void under the Constitution. How can the legislature infuse life into that which is constitutionally dead? This I regard as the vital question in the case. If a public election on the question of the increase of municipal indebtedness can be held in admitted disregard of all statutory requirements—in the face of the constitutional provision that it shall be held as provided by law—and such an invalid election can be subsequently made valid by an act of the legislature, the plain constitutional requirement will become a dead letter, for, as in this case, an act of assembly under the guise of general legislation can make a void election valid, and a safeguard of the Constitution against municipal improvidence will be stricken down. Nothing in Rebman v. School District, 201 Pa. 437, is in conflict with the foregoing view. All that was there decided was that Section 4 of Article VIII of the Constitution, which provided that "every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the elector who presents the ballot," did not apply to an election upon the increase of a debt of a school district. No other question was before the court.

I would reverse the decree, reinstate appellant's bill and direct the injunction to issue as prayed for.

DISSENTING OPINION BY MR. JUSTICE STEWART:

The power of the legislature to give validity to something which, because of its want of conformity to existing legal requirements, is without validity, is subject to

a manifest limitation. The legislature may not accomplish by curative legislation that which it could not have done by and through the act which prescribed the requirements, the neglect or .disregard of which had resulted in the defect sought to be cured. For very manifest reasons it could not, in the act prescribing these requirements, have excepted .the Borough of Carlisle from its terms. What is the Act of June 19, 1911, but an attempt to accomplish indirectly through subsequent legislation something that was forbidden the legislature that passed the original enactment? The same infirmity that would have attached to the original act, had it excepted any borough from its requirements, must attach to the later—it is special legislation, and that too in regard to a subject which by express constitutional provision can be regulated only by uniform law. For this additional reason I dissent from the decision. I am authorized by my brothers BROWN and MESTREZAT to say that they concur herein.