## Brookville's Election.

*Election law—Increase of indebtedness—Boroughs — Defects in proceedings—Act of May 1, 1909—Validating Acts of March 21, 1921, April 12, 1921, April 26, 1921, April 18, 1923, and June 29, 1923.*

1. Where an election was held in 1919 for an increase of borough indebtedness, and a pronounced majority of votes cast in favor thereof, the validating Acts of March 21, 1921, P. L. 50; April 12, 1921, P. L. 126; April 26, 1921, P. L. 290; April 18, 1923, P. L. 68, and June 29, 1923, P. L. 939, cure defects in ordinances authorizing the election, defects in advertising, and defects in holding and making return of the election and recording the same.

*Election law—Officers—Presumption as to performance of duty—Counting ballots—Borough indebtedness—Act of May 1, 1909.*

2. Public officials are presumed to do their duty, and any one alleging the contrary has the burden of proof. This rule applies to election officers.

3. A court may not discredit or doubt its own records.

4. A record is primary evidence of what it contains.

5. Under the Act of May 1, 1909, P. L. 317, the court is not required to count or canvass returns for elections to increase borough indebtedness.

*Boroughs—Increase of debt—Ordinances—Parties—Declaratory judgment proceedings—Acts of May 1, 1909, and June 18, 1923.*

6. Under the Act of May 1, 1909, P. L. 317, there is nothing improper or irregular in the simultaneous publication of an ordinance signifying the desire for an increase of borough indebtedness and the ordinance giving notice of the election therefor.

7. In a proceeding under the Declaratory Judgment Act of June 18, 1923, P. L. 840, to test the validity of the increase of a borough indebtedness, where the petitioners and respondents comprise the entire body of the borough authorities, it is not necessary to make the individual citizens of the borough parties to the proceeding.

*Constitutional law—Declaratory Judgment Act of June 18, 1923.*

8. The Declaratory Judgment Act of June 18, 1923, P. L. 840, does not violate article i, section 17, or article v, section 27, of the Constitution of Pennsylvania.

9. In order to warrant adjudging an act of assembly unconstitutional, it must clearly appear so, and the burden of showing its unconstitutionality is on the party making such allegation.

In re validity of election in the Borough of Brookville on proposed increase of indebtedness. Application for a declaratory decree under Act of June 18, 1923, P. L. 840. Q. S. Jefferson Co., Oct. Sess., 1923, No. 46.

*Brown & Means*, for petitioners; *W. N. Conrad*, contra.

CORBET, J., March 29, 1924.—Section 1 of the Act of May 1, 1909, P. L. 317, provides: "Whenever the corporate authorities of any . . . borough . . . by their ordinance or vote shall have signified a desire to make such increase of indebtedness (to an amount exceeding 2 per centum, and not exceeding 7 per centum, upon the last preceding assessed valuation of the taxable property therein), they shall give notice during at least thirty days, by weekly advertisements in the newspapers, . . . of an election to be held at the place or places of holding the municipal elections in said . . . municipality, on a day to be by them fixed, for the purpose of obtaining the assent of the electors thereof to such increase of indebtedness.

"Said notice shall contain a statement of the amount of the last assessed valuation, of the amount of the existing debt, of the amount and percentage of the proposed increase, and for (of) the purposes for which the indebtedness is to be increased.

"Such election shall be held at the place, time and under the same regulations as provided by law for the holding of municipal elections, and it shall be

the duty of the inspectors of such election to receive tickets and to deposit said tickets in a box provided for that purpose, as is provided by law in regard to other tickets received at said election; and the tickets so received shall be counted and a return thereof made to the Clerk of the Court of Quarter Sessions of the proper county, duly certified, as is required by law, together with a certified copy of the ordinance and the advertisement; and the said Clerk shall make a record of the same, and furnish a certified copy thereof, under seal, showing the result, to the corporate authorities of such municipality, and the same shall be placed of record upon the minutes thereof."

It was therein further provided: "In receiving and counting, and in making returns of the votes cast, the inspectors, judges .and clerks of said election shall be governed by the laws of this Commonwealth regulating municipal elections; and the vote shall be counted by the court, as is now provided by *general laws governing municipal elections.*"

In giving construction to said Act of 1909, the Supreme Court, in Hoffman *v.* Pittsburgh, 229 Pa. 36, said: "In view of this . . . clear statutory provision, . . . the first step to be taken by a municipality in undertaking to increase its indebtedness is action by its corporate authorities, by ordinance or vote, expressive of their desire that the increase shall be made. Before such election can be authorized by the municipal authorities, they must first act by giving expression, by 'ordinance or vote,' of their desire for the increase. That must have been expressed by a separate and independent action. Whenever the corporate authorities of any (borough), 'by their ordinance or vote, shall have signified a desire to make such increase of indebtedness,' they shall proceed to give the notice required by the act that the question of the increase of the indebtedness will be submitted to the electors."

By the respondents it is contended:

1. That as there was but one ordinance enacted, which combined a first section expressive of the desire of the corporate authorities to increase the indebtedness, a second section providing for an election for the purpose of obtaining the assent of the electors to such increase of indebtedness, and a third section providing for the giving of notice of the election, and for what the notice should contain, the act referred to was not complied with, in that there was not first an ordinance or vote by the corporate authorities expressive of their desire to increase the indebtedness prior to an. ordinance appointing an election for the purpose of obtaining the assent of the electors to the increase.

2. That the borough authorities proceeded to advertise the notice for the election before the Ordinance of April 21, 1919, became operative. The newspaper advertisements were made April 23rd, May 1st, 8th, 15th, 22nd and 29th, and June 5, 1919.

3. That no return of the election of June 10, 1919, was made to the Clerk of the Court of Quarter Sessions of the county, duly certified, as is required by law, together with a certified copy of the ordinance and the advertisement.

4. That if such return was made to the Clerk, he did not make a record of the same, and furnish a certified copy thereof, under seal, showing the result, to the corporate authorities of the borough.

5. And, if he did, that it was not placed of record upon the minutes of the borough.

6. That the "Uniform Declaratory Judgment Act" of June 18, 1923, P. L. 840, is violative of article I, section 17; article V, section 27, and article IX, section 8, of our State Constitution.

7. That as every citizen of the borough is an interested person, all should be made parties to, or have notice of, this proceeding.

It would seem appropriate here to refer to numerous acts of assembly ratifying, confirming and making valid municipal elections, such as the one now under consideration, where the majority of votes cast was in favor of the increase of indebtedness, notwithstanding the following matters, to wit, Act of March 24, 1921, P. L. 50: "The authorities . . . did not, by separate and independent action, prior to the ordinance or vote in pursuance of which notice of election was given to the electors, signify their desire for such increase of indebtedness, or did not, in the words of the act and amendments and supplements ·. . . authorizing such increase, signify their desire for such increase of indebtedness: . . . full, complete and proper return of the votes was not made to the proper. court, or counted by the court, or a record showing the result made and certified by the clerk of said court to the proper authorities. of such . . . municipality; any defect or informality in the manner of holding or giving notice of such election; . . . error of . . . numerical statement on any or all of the ballots."

April 12, 1921, P. L. 126: "The returns of the votes cast for or against such proposed increase of indebtedness were not made to the Clerk of the Court of Quarter Sessions of the Peace of the county; . . . the votes were canvassed and computed by the county commissioners . . . and . . . were not computed by the court; . . . the authorities of such . . . borough . . . did not, by separate and independent action prior to the ordinance or vote in pursuance of which notice of the election was given to the electors, signify their desire for such increase of indebtedness."

Act of April 26, 1921, P. L. 290: "The authorities . . . did not, by separate and independent action, prior to the ordinance or vote in pursuance of which. notice of election was given to the electors, signify their desire for such increase of indebtedness, . . . and notwithstanding full, complete and proper return of the votes was not made to the proper court, or counted by the court, or a record showing the results made and certified by the Clerk of said court. to the proper authorities of such . . . municipality, and nothwithstanding any defect or formality in the manner of holding or giving notice of such election, and notwithstanding any mistake in stating the amount of percentage of the existing debt, or the percentage of the proposed increase, or patent error of orthography or of numerical statement on any or all of the ballots."

Act of April 18, 1923, P. L. 68, is substantially the same as the last preceding act mentioned, save that the following is added: "and notwithstanding any discrepancy between the amount of the proposed increase of indebtedness. as contained in the published and posted advertisements and in the printed ballot."

Act of June 29, 1923, P. L. 939, is a copy or re-enactment of the Act of April 26, 1921, P. L. 290, which has been referred to.

There is no question but that the election was held and that a very pronounced majority of the votes cast were in favor of the increase of indebtedness.

It is clear from the validating acts referred to that if there were any such informalities, irregularities, defects or omissions as are contended for by respondents, with respect to the antecedent actions of the borough authorities, pertaining to or in the conduct of the election, or with respect to anything subsequent thereto, they have been entirely cured thereby, and that the election stands fully ratified, confirmed and made valid.

That no original ballots, tally-sheets, or the like, are now to be found is not at all surprising. No ballots, save those cast, would be of any significance at the present time, and it is to be assumed they, as well as other election papers,

were sealed up in the ballot-box after the count and taken out and destroyed at the next election. Public officials are presumed to do their duty; any one alleging the contrary has on him the burden of proving it. By the Act of May 1, 1909, P. L. 317, the inspectors of the election are to receive tickets, which are to be counted, "and a return thereof (that is, of the result of the count) made to the Clerk of the Court of Quarter Sessions, . . . together with a certified copy of the ordinance and the advertisement." The act does not call for the return of anything else. "And the said Clerk shall make a record of the same," which he did in the present instance, in the book styled "Election Docket." We may not discredit or doubt our own records, and this one is ample evidence that the election was held, that it resulted in the casting of 349 votes for, and 62 against, the desired increase of indebtedness, that the election board returned it, and that the Clerk made a record of it. This record is not alone secondary but primary evidence of what it contains: Ruggles v. Alexander, 2 Rawle, 232; Berghaus v. Alter, 5 Pa. 507; Boyd v. Com., 36 Pa. 355.

The act last referred to stipulates: "And the vote shall be counted by the court *as is now provided by general laws governing municipal elections.*" The reasoning in Steelton Borough's Election, 22 Pa. C. C. Reps. 593, shows that under a prior act, similar in nature and terms, the court could not be called upon to count the vote. In Knight v. Coudersport Borough, 246 Pa. 284, where an election under the Act of 1909 was in question, and it was admitted there had been no canvass or count by any court, the learned judge of the lower court, referring to the case mentioned, said: "The law does not require the counting or canvassing of election returns for elections to increase borough indebtedness." To which the Supreme Court, by Mr. Justice Moschzisker, added: "We have examined all the relevant acts of assembly, and agree with the court below that they do not contemplate or require the returns of a special election of the character of the one under consideration to be counted by the Court of Common Pleas." The validating acts were not needed, therefore, so far as a count of the votes by the court was concerned.

There would be nothing improper or irregular in this case, in our opinion, in the simultaneous publication of the ordinance signifying the desire and the ordinance giving notice of the election. The act says: "Whenever the corporate authorities, . . . by their ordinance or vote, shall have signified a desire to make such increase, . . . they shall give notice . . . of an election." When the town council passed, and the burgess approved, the ordinance, the corporate authorities had fully signified their desire, and they might then, inceptively, start notice of the election to continue during at least thirty days. There is nothing in the act indicating that the election notice must not have a beginning until the signification of desire had been published and posted for ten days. Such delay might be the waste of valuable time. But, however that may be, the validating acts referred to having cured the coupling together of the ordinance signifying desire and that for notice of the election, also validated their simultaneous publication and cured any defect or informality, if there were any, in the manner of giving notice of the election.

We are of opinion that the provision in article IX, section 8, of the State Constitution, respecting "the consent of the electors thereof at a public election in such manner as shall be provided by law," has not been violated in the present instance.

The constitutionality of "Uniform Declaratory Judgment Act" of June 18, 1923, P. L. 840, is attacked by respondents, in that it is alleged to be violative of article I, section 17, and article V, section 27.

No contract whatever is involved in the present proceeding, and, as appli-

cable thereto, we are unable to see how the act can be applied or construed as in any way "impairing the obligation of contracts." We are equally unable to see how it violates section 27 of article v, for it nowhere abridges or deprives parties of the right, "by agreement filed," to "in any civil case dispense with trial by jury, and submit the decision of such case to the court having jurisdiction thereof," nor in any way impinges on the provisions of that section. The act, in its 9th section, has the right to trial by jury in view, for it provides: "When a proceeding under this act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." The method heretofore used to test the legality of proceedings to increase the indebtedness of municipalities has been usually, if not exclusively, by bill in equity to restrain the municipal authorities from incurring the indebtedness or issuing obligations therefor. But that mode does not indicate that resort must be had to a jury to try and determine, nor does it involve "trial by jury, . . . as heretofore."

In order to warrant adjudging an act of assembly unconstitutional, it must clearly appear so, and the burden of showing it is on the party making such allegation. Respondents having failed in this particular, we are to accept the act as valid for present purposes. The opinion of the court is sought concerning the validity or invalidity of the proceedings taken to sustain the borough authorities in incurring the desired increase of indebtedness and issuing the borough's bonds or other obligations therefor; and that being the important matter, we do not feel any call upon the court for the exercise of any specially keen penetration or discernment in an effort to discover a constitutional defect in the act.

The parties, petitioners and respondents, comprise the entire body of borough authorities. They are the representatives of the people. We are of opinion there is no occasion or necessity for making the individual citizens of the borough parties to this proceeding; they are being represented and have been heard by, and will be controlled and bound through, their representatives.

*Judgment.*

And now, March 29, 1924, after hearing and due and careful consideration, the court is of opinion, and therefore adjudges and decrees, that the corporate authorities of the Borough of Brookville complied with every essential provision of law precedent to the election held June 10, 1919, for the purpose of obtaining the assent of the electors of said borough to the increase of the indebtedness of said borough in the sum of $70,000, being with the then existing indebtedness of the borough 6.239 per cent., and not in excess of 7 per centum upon the assessed value of the taxable property therein, as determined upon the last preceding assessed valuation thereof; that said election was legally and lawfully held, and the majority of votes cast thereat was in favor of the desired increase of indebtedness; that the steps subsequently taken with respect thereto were all that the law required; that said election is in every respect valid; that the corporate authorities of said Borough of Brookville are, in pursuance of the proceedings taken to that end, fully, legally and lawfully authorized and empowered to incur and increase the indebtedness of said borough in the said sum of $70,000, and to issue its bonds or obligations therefor in the manner and form and under the conditions, provisions and requirements of law with respect thereto, and that the Borough of Brookville pay the costs in this case.

From Raymond E. Brown, Brookville, Pa.